766 P.2d 792

**Ralph H. SAWYER, Jr., Individually and as the Personal Representative of William Sawyer, a/k/a William F. Sawyer, Deceased; and June Sawyer, Plaintiffs–Appellants,**

**v.**

**Wayne Elbert CLAAR, Defendant–Respondent.**

**No. 16804.**

Court of Appeals of Idaho.

Dec. 7, 1988.

William B. Taylor, Jr., Grangeville, for plaintiffs-appellants.

Michael E. McNichols and John R. Stegner, Clements, Brown & McNichols, Lewiston, for defendant-respondent.

BURNETT, Judge.

The question posed by this appeal is whether a damage award for wrongful death is inadequate. For reasons explained below, we remand the case for reconsideration by the trial judge.

The background facts are undisputed. While driving along a two-lane road in rural Idaho County, William Sawyer was involved in a collision between his pickup and an oncoming logging truck driven by Wayne Claar. Sawyer died shortly after the accident. His parents, Ralph and June Sawyer, sued Claar for damages arising from wrongful death. The case was tried to a jury, which returned a verdict for the Sawyers in the amount of $5,000, of which $2,000 was a stipulated sum for funeral expenses. The jury also found that the decedent had been 25% negligent, resulting in a reduction of the judgment for comparative fault. Dissatisfied with the size of this award, the Sawyers moved for a new trial under I.R.C.P. 59(a)(5). The trial judge denied the motion and this appeal followed.

## I

We first discuss our standard of review and the manner in which the district judge reached his decision. The standard is well settled. A trial judge's decision on a motion for new trial will be upheld on appeal unless there has been an abuse of discretion. *See Quick v. Crane,* 111 Idaho 759, 727 P.2d 1187 (1986). Discretion will be deemed to be properly exercised where the trial court has "given due consideration to the facts and circumstances of the case, and [has] correctly applied the law [to those facts and circumstances]." *Id.* at 772, 727 P.2d at 1200.

To facilitate review according to this standard, the Idaho appellate courts have required trial judges to state their reasons for granting or denying motions for a new trial.

> Appellate review of judicial discretion should not be result-oriented. An appellate court should not focus primarily upon the outcome of a discretionary decision below, but upon the process by which the trial judge reached his decision. In order for the appellate court to perform this function properly, it must be informed of the reasons for the trial court's decision. Unless those reasons are obvious from the record itself, they must be stated by the trial judge. Where the reasons are neither obvious nor stated, the appellate court is left to speculate about the trial court's perception of the law and knowledge of the facts. As a practical matter, the appellate court finds itself locked into a result-oriented review.

*Sheets v. Agro–West, Inc.,* 104 Idaho 880, 888, 664 P.2d 787, 795 (Ct.App.1983) (concurring opinion). *See also Quick v. Crane,* 111 Idaho at 772, 727 P.2d at 1200.

In reaching its decision, the trial court follows a well-defined methodology prescribed by our Supreme Court:

> Where a motion for a new trial is premised on inadequate or excessive damages, the trial court *must* weigh the evidence and then compare the jury's award to what he would have given had there been no jury. If the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice, the verdict ought not stand. It need not be proven that there was in fact passion or prejudice nor is it necessary to point to such in the record. The appearance of such is sufficient. A trial court is not restricted to ruling a verdict inadequate or excessive

"as a matter of law." Additionally, the rule that a verdict will not be set aside when supported by substantial but conflicting evidence has no application to a trial court ruling upon a motion for a new trial.

*Dinneen v. Finch,* 100 Idaho 620, 625–26, 603 P.2d 575, 580–81 (1979) (emphasis original, citations omitted).

Often the trial judge's figure for damages will differ from that reached by the jury. However, the judge's authority to disturb the verdict is limited. Respect for the function of the jury prevents the granting of a new trial except in unusual circumstances.

> [S]ince it is a jury function to set the damage award based on its sense of fairness and justice, the trial judge must defer to the jury, *unless* it is apparent to the trial judge that there is a great disparity between the two damage awards and that disparity cannot be explained away as simply the product of two separate entities valuing the proof of the plaintiff's injuries in two equally fair ways.
>
> In other words, if the trial judge discovers that his determination of damages is so substantially different from that of the jury that he can *only* explain this difference as resulting from some unfair behavior, or what the law calls "passion or prejudice," on the part of the jury against one or some of the parties, then he should grant a new trial. How substantial this difference must be is impossible to formulate with any degree of accuracy. It will necessarily vary with the factual context of each case and the trial judge's sense of fairness and justice.

*Quick v. Crane,* 111 Idaho at 769, 727 P.2d at 1197 (emphasis original).

In sum, *Dinneen* and *Quick* do not countenance automatic substitution of a judge's damage award for that of the jury whenever the two differ. Rather, the trial judge must follow a carefully delineated process. First, the judge must weigh the evidence to determine whether it supports the verdict. If the verdict could be sustained upon substantial evidence, but the trial judge nonetheless believes an injustice has occurred because the verdict is excessive or inadequate, then he must determine whether the jury appears to have acted under the influence of passion or prejudice. *See* I.R.C.P. 59(a)(5). In making this determination, the trial judge looks to the disparity between the jury's award and his own assessment of damages, asking whether such a disparity could exist in "two equally fair" evaluations of damages. *Sanchez v. Galey,* 112 Idaho 609, 615, 733 P.2d 1234, 1240 (1986) (quoting *Quick v. Crane,* 111 Idaho at 769, 727 P.2d at 1197).

Here, the Sawyers contend that the trial judge reached his decision improperly because he did not state the amount that he would have awarded had the case not been tried to a jury. The primary justification for requiring a judge to express an opinion as to the appropriate amount of damages is that it will assist the appellate court in determining that discretion has been exercised in conformity with the *Dinneen–Quick* methodology. However, we believe that where the trial judge fully states his reasons for denying the motion for new trial, his failure to specify a dollar figure does not require automatic reversal. After all, it is the judge's sense of a disparity and the reason for it, rather than the dollar difference *per se,* which is critical to his proper exercise of discretion.

In the present case, the trial judge made findings and provided detailed reasons for his decision to deny the Sawyers' motion. As he explained:

> The record would reflect that this Court has weighed the evidence received in this trial, and furthermore, that it has considered the credibility of the witnesses, and I have in fact compared the jury's award to what I would have awarded in this action had there been no jury.
>
> Initially, I think, it should be pointed out that there seems to be a glaring absence of facts in this case which would have resulted in a verdict influenced by passion or prejudice, as it applied to the Plaintiffs.
>
> . . . .

Now, all of this does not mean, of course, that therefore, a 59(a)(5) motion should not be granted. Or simply stated, if it appears that this verdict was given under the influence of passion or prejudice as a result of the dollar award alone, a new trial could be granted, regardless of the Court's failure to find any facts that were introduced at trial which would tend to inflame the passions or prejudices of the jury.

We're also, gentlemen, dealing with another problem in this particular case, that is, we're dealing with the loss of comfort and society, which is a very difficult loss to quantify. The fact that it's a difficult loss to quantify, however, doesn't mean that any award, no matter how small or how large it is, can be rubber stamped by the Court simply because his guess would be as good as their's. And, in fact, this Court is required and this Court has made it's own evaluation of what would be proper in this case.

It is first of all, this Court's determination that the verdict received and rendered by the jury is supported by substantial, competent evidence.

Secondly, the disparity between the Court's evaluation and the jury verdict is not so great that it appears that the award was given under the influence of passion or prejudice.

Thirdly, the verdict does not present the appearance of passion or prejudice.

Fourthly, the disparity is not so great that the verdict of the jury shocks my conscience.

Number five, the disparity is not so great that I would conclude that it would be unconscionable to let the damage award stand as the jury set it.

This Court does not perceive that a miscarriage of justice occurred in this case. I think it is very important that this Court simply not substitute its own opinion as to what the verdict should have been. This Court must have an understanding and a respect for the collective wisdom of the jury, regardless of some doubts that I may have about their conclusions.

The judge concluded that the verdict was not inadequate.

We believe the reasons given by the trial judge were sufficient to disclose his thought processes. Furthermore, the judge's analysis closely tracked the standards grafted upon I.R.C.P. 59(a)(5) by our Supreme Court in *Dinneen* and *Quick*. We discern no reversible error in the manner by which his decision was reached.

## II

This conclusion does not end our inquiry. Although the judge reached his decision in a permissible manner, the next question is whether the decision itself—allowing the jury's award of damages to stand—was a sound exercise of discretion.

As we approach this substantive issue, we do not intend to substitute our judgment for that of the district judge. Appellate review of judicial discretion should not be result-oriented. *See Sheets v. Agro–West, Inc., supra.* Rather, we base our review upon the reasons provided by the trial judge. The trial judge in this case conceded that the verdict was strikingly low, but he declined to find passion or prejudice on that basis. The question, then, is whether the jury's award was so low that injustice was manifest and passion or prejudice should have been presumed.

When he died, William Sawyer was a twenty-nine-year-old divorced male living with his father. The evidence at trial showed that William had a normal, healthy, loving relationship with both parents.[1] In this lawsuit, the parents sought recovery for the loss of their son's "society and companionship." As noted earlier the jury awarded $5,000, subject to adjustment for comparative fault. Deducting the stipulated funeral expense of $2,000, the jury's verdict amounted to $3,000 for the parents' combined loss of their son.

---

1. Ralph and June Sawyer were separated at the time of their son's death. They subsequently were divorced.

The parents' claim was brought under I.C. § 5–311, which permits a decedent's heirs to seek damages for wrongful death. Under this statute "such damages may be given as under all the circumstances of the case may be just." Our Supreme Court has interpreted this language broadly. Recovery for wrongful death is not limited to pecuniary loss; intangibles such as the loss of society and companionship are compensable. *See Hayward v. Yost,* 72 Idaho 415, 242 P.2d 971 (1952); *Hepp v. Ader,* 64 Idaho 240, 130 P.2d 859 (1942); *Kelly v. Lemhi Irrigation and Orchard Co., Ltd.,* 30 Idaho 778, 168 P. 1076 (1917).

In the *Kelly* case, our Supreme Court determined that the predecessor of I.C. § 5–311 did not prevent collateral relatives from recovering for the wrongful death of an adult family member. Such a claim could be maintained, the Court held, solely for the loss of society and companionship of the deceased. The *Kelly* court observed that there was no evidence indicating any of the plaintiffs in that case were financially dependent upon the decedent; nor did the evidence show that they would have received any such aid in the future. The Court concluded that the loss of society, companionship, comfort and advice—those kinds of emotional support that one receives throughout life from a parent, child, brother or sister—would constitute "a substantial, serious and material injury and should be compensated as damages." *Id.* at 785, 168 P. at 1077.

Courts in other jurisdictions have adhered to the view that in a wrongful death action brought by next of kin, substantial damages may be inferred from destruction of a family relationship. *See, e.g., Ferraro v. Augustine,* 45 Ill.App.2d 295, 196 N.E.2d 16 (1964) (action by parents for wrongful death of adult son). Parental loss of society, companionship, due to wrongful death of adult children, has received scholarly attention as well. *See, e.g.,* Joselson, *Parents' "Pecuniary Injuries" for the Wrongful Death of an Adult Child: Where is the Love?,* 12 VT.L.REV. 47 (1987); Bainbridge, *Loss of Consortium Between Parent and Child,* 71 A.B.A.J. 47 (October 1985).

Consequently, in recent years, the courts increasingly have held that an emotional loss caused by the death or serious injury of an adult child is no less crippling or compensable than if the child had been a minor. As the Supreme Court of Arizona has noted:

It is irrelevant that parents are not entitled to the services of their adult children; they continue to enjoy a legitimate and protectible expectation of consortium beyond majority arising from the very bonds of the family relationship. Surely nature recoils from the suggestion that the society, companionship and love which compose filial consortium automatically fade upon emancipation; while common sense and experience teach that the elements of consortium can never be commanded against a child's will at any age. The filial relationship, admittedly intangible, is ill-defined by reference to the ages of the parties and ill-served by arbitrary age distinctions. Some filial relationships will be blessed with mutual caring and love from infancy through death while others will always be bereft of those qualities. Therefore, to suggest as a matter of law that compensable consortium begins at birth and ends at age eighteen is illogical and inconsistent with common sense and experience. Human relationships cannot and should not be so neatly boxed. "The law does not fly in the face of nature, but rather acts in harmony with it."

*Frank v. Superior Court,* 150 Ariz. 228, 233, 722 P.2d 955, 960 (1986) (citations omitted). *See also Barrett v. Charlson,* 18 Md.App. 80, 305 A.2d 166 (1973) (damages for solatium of minor child extend beyond twenty-first birthday); *cf. Riley v. California Erectors, Inc.,* 36 Cal.App.3d 29, 111 Cal.Rptr. 459 (1973) (loss of society of adult son may be considered along with pecuniary loss).

The Supreme Court of Texas has given exhaustive treatment to this particular issue. The Court has elaborated upon that element of damages known as loss of society and companionship. "Loss of society," the Court explained, "constitutes a loss of

positive benefits which flowed to the family from the decedent's having been a part of it. . . . Loss of society asks, 'what positive benefits have been taken away from the beneficiaries by reason of the wrongful death?'" *Moore v. Lillebo,* 722 S.W.2d 683, 687–88 (Tex.1986) (action by parents for wrongful death of adult son). The Texas Court has concluded that the following factors should be considered by the trier of fact in making its award: the relationship between the parent and child, the living arrangements, any absence of the deceased from the "beneficiary" for extended periods, the harmony of family relations, and common interests and activities. *Id.*

The facts of the instant case, considered in light of these criteria, portray a strong relationship between William Sawyer and his parents. He lived with his father and visited his mother often. In fact, he was on his way to see her when he was killed. Family relations were harmonious. William often spent time with his father in outdoor activities. Nevertheless, the jury awarded only $3,000, plus funeral expenses, for the parents' loss at his death.

This verdict resembles awards made a half-century ago, when wrongful death recoveries were notoriously small. *E.g., Gardner v. Hobbs,* 69 Idaho 288, 206 P.2d 539 (1949) ($7,000 award to mother for death of sons aged twenty-one and nineteen); *Butler v. Townend,* 50 Idaho 542, 298 P. 375 (1931) ($2,500 to parents of adult daughter). *See also Rocca v. Tuolumne County Electric Power and Light Co.,* 76 Cal.App. 245 P. 468, 569 (1926) ($12,000 verdict for death of adult son); *Little v. Yanagisawa,* 70 Cal.App. 303, 233 P. 357 (1925) ($5,000 award for death of twenty-one-year-old daughter); *Hiller v. Kepler,* 125 Kan. 679, 266 P. 73 (1928) ($6,000 verdict for death of twenty-three-year-old son); *Berry v. Dewey,* 102 Kan. 593, 172 P. 27 (1918) ($5,000 award for death of thirty-three-year-old son); *Christensen v. Floriston Pulp & Paper Co.,* 29 Nev. 552, 92 P. 210 (1907) ($10,000 verdict for death of thirty-year-old son held excessive). Indeed, the award in this case is even smaller than those cited because of the decreasing value of the dollar. For example, a 1967 dollar is the equivalent of almost 3.5 dollars in 1988; a 1947 dollar is worth more than five current dollars; and a pre-World War I dollar is worth more than twelve current dollars.

The recent trend has been toward greater recoveries. *E.g., Sawyer v. United States,* 465 F.Supp. 282 (E.D.Va.1978) ($100,000 award to parents of adult son for pecuniary loss and loss of companionship); *Sanders v. Green,* 208 F.Supp. 873 (E.D.S.C.1962) (award of $5,000 to brothers and sisters of adult decedent held grossly inadequate); *Braun v. Moreno,* 11 Ariz.App. 509, 466 P.2d 60 (1970) (upholding award to parents of $53,293 for death of twenty-six-year-old child living at home and contributing financially); *Butler v. Steck,* 146 Conn. 114, 148 A.2d 246 (1959) ($6,600 award to parents of deceased twenty-four-year-old son held inadequate); *Williams v. State Farm Mutual Auto Insurance Co.,* 349 So.2d 1275 (La.Ct.App.1977) ($50,000 awarded to each parent for death of twenty-one-year-old son living at home); *Bryant v. Travelers Insurance Co.,* 307 So.2d 749 (La.Ct.App.1975) (award of $25,000 to parents of twenty-two-year-old son); *Currie v. Fiting,* 375 Mich. 440, 134 N.W.2d 611 (1965) (award of $1,000 *per year* for life expectancy of parents for death of twenty-one-year-old daughter); *Waltee v. Petrolane, Inc.,* 162 Mont. 317, 511 P.2d 975 (1973) (awards of $82,800 to parents of deceased twenty-eight-year-old husband, and $101,100 to parents of twenty-three-year-old wife, who had not contributed financial assistance to their parents); *Bell v. Cox,* 54 A.D.2d 920, 388 N.Y.S.2d 118 (1976) ($10,000 award to parents of nineteen-year-old girl held shockingly inadequate).

Some low awards still appear in the case reports. *See Waggoner v. Bevich,* 127 Ga. App. 877, 195 S.E.2d 246 (1973) ($3,500 award to mother of deceased twenty-three-year-old male); *Roda v. Williams,* 195 Kan. 507, 407 P.2d 471 (1965) ($4,000 award to parents of twenty-year-old son); *Tezeno v. Maryland Casualty Company,* 166 So. 2d 351 (La.Ct.App.1964) ($5,000 award to father for death of twenty-six-year-old son). But these awards are increasingly rare;

even so, they are higher than the verdict in this case, when expressed in constant dollars.

Moreover, we note that a leading source of national jury verdict statistics indicates that current verdicts in wrongful death cases involving adult single males between the ages of twenty-five and thirty-five are significantly higher than the award in this case. *See* 2 JURY VERDICT RESEARCH, INC., PERSONAL INJURY VALUATION HANDBOOKS, RELEASE NO. 232, WRONGFUL DEATH–ADULT SINGLE MALES (1987). The survey by JURY VERDICT RESEARCH, INC. revealed that the midpoint (or middle) verdict in this group was $392,954, with a verdict range from $40,000 to $2,000,000. The majority of the awards fell between $175,000 and $725,000. Of course, these results do not differentiate among the pecuniary and emotional elements of damages claimed. Neither do they classify the awards according to the number of family members involved or according to other factors that might affect the size of awards. They are not directly apposite here, but they are broadly illustrative of the general increase in compensation awarded by juries for wrongful death.

Although we acknowledge that every reported case is unique in some respect, we believe the pattern is clear. The instant case is an aberration from the pattern. Our conclusion can be expressed in the parlance of statistical analysis. When data such as jury verdicts are evaluated, the distribution of data may be plotted in a probability range. The results ordinarily will tend to cluster; unusually low or high results will stand out. We believe the verdict in this case stands out. It strongly suggests the influence of passion or prejudice.

As statistical analysis of jury verdicts becomes more refined, it may become possible to employ the most common method for measuring the variability of data: the standard deviation.[2] In a normal "bell" distribution, approximately thirty-four percent of the results will fall within one standard deviation below the mean or average and approximately thirty-four percent will fall within one standard deviation above the mean. Therefore, approximately sixty-eight percent of the results will fall within one standard deviation of the mean. In addition, approximately ninety-six percent of all results will fall within two standard deviations from the mean. Statisticians generally conclude that results lying more than two standard deviations from the mean reflect some abnormal event or extrinsic force.[3]

In the case at hand, we have not applied a standard deviation analysis. The record does not contain, and our research has not revealed, an adequate data base of verdicts in closely similar cases. However, we think this methodology may be useful in future cases where the data are available. For our purposes today, we deem it sufficient to say that the award here is so low that it is analogous to a result beyond the second deviation. It strongly suggests, in and of itself, an improper factor in the jury's decision.

We are mindful that the jury is the "voice of community." In order to preserve the values a jury brings to our judicial system, we must be prepared to accept a greater degree of disparity in jury decisions than we might tolerate from judges. Nonetheless, justice should not be an entirely uncontrolled roll of the dice. Verdicts that clearly fall below a range of reasonable expectation cannot be accepted without careful scrutiny. In our view, the award in this case is outside the range. It is unacceptable unless it can be cogently justified by some unique facts which we have failed to discern from the record.

Accordingly, the order of the district court, denying the Sawyers' motion for a

---

2. The standard deviation of any set of numbers is the square root of a fraction in which the numerator is the sum of the squares of the differences between each score and the mean, and the denominator is the number of scores.

3. For a general treatment of statistical concepts, and their legal applications, *see*, J. MONAHAN AND L. WALKER, SOCIAL SCIENCE IN LAW (1985).

new trial, is vacated. The case is remanded for the trial judge to identify the particular facts, if any, which rationally explain this unusual result. If the judge cannot point to any such specific facts, then passion or prejudice must be presumed. In that event, the court shall grant a new trial or direct an appropriate additur.

Costs to appellants. No attorney fees awarded.

WALTERS, C.J., and HUNTLEY, J. Pro Tem., concur.