769 P.2d 558

**Anne T. HOWES, Plaintiff-respondent,**

**v.**

**Dennis Lee FULTZ and Jack Johnson, Defendants-appellants,**

**and**

**Wilma Goldie Hulit, Defendant.**

**No. 17273.**

Supreme Court of Idaho.

Feb. 10, 1989.

Benoit, Alexander, Sinclair, Harwood & High, Ketchum, for appellants. Robert M. Harwood argued.

Smith, Beeks & Goss, Twin Falls, for respondent. Paul M. Beeks argued.

BAKES, Justice.

Plaintiff Howes sued defendants Fultz, Johnson and Hulit for damages arising from a broken hip suffered in an automobile accident. On the court's special verdict form the jury apportioned 75% of the negligence to Hulit, 20% to Fultz and Johnson, and 5% to plaintiff Howes. The jury determined plaintiff's damages to be $118,000. In response to various post trial motions, the trial court granted a j.n.o.v. removing the 5% negligence allocated by the jury to Howes and granted an additur of $14,000 for permanent disfigurement. Appellants appeal from the trial court's memorandum decision and order and the amended judgment. We affirm in part, reverse in part, and remand.

## I

### FACTS

This damage action arose from an automobile accident which occurred approximately one-half hour after sunset on August 27, 1985, near Shoshone, Idaho. Plaintiff respondent Howes was a passenger in the right front seat of an eastbound car driven by defendant Hulit, which collided with the rear of an eastbound tractor/hay baler combination. The tractor/baler was being operated by defendant Fultz, an employee of the owner, Johnson. The farm implements were being moved down the highway between farm operations.

The tractor was illuminated by four white lights pointing forward. To the rear and aimed at the bailer, the tractor had two white floodlights, similar in intensity to low beam car headlights. They were located on top of the cab, about nine feet from the ground. Immediately forward of these two white lights were two orange flashing lights which the evidence indicated may have been obscured due to the intensity of the white lights. Below the white lights, approximately six feet off the ground, were two red taillights—one on each side of the tractor. Between these lights a "slow moving vehicle" reflective triangle was located.

The baler was equipped on the rear with two 4–inch red lights (one on each side), a "slow moving vehicle" triangle, and a 4–inch white working light. The white working light was obscured by the baler frame

and would not have been visible from the rear, but both the tractor driver and the tractor owner testified that the two red lights were working shortly before the baler got onto the highway. There were no flashing red lights or pilot vehicles following the baler.

At the time of the accident the tractor/baler was traveling at 18 m.p.h. The Hulit vehicle was traveling between 45 and 50 m.p.h. The highway was level, wide and dry, and testimony was given that visibility was in the range of two miles.

Mrs. Hulit took no evasive action of any kind prior to impact. There were no skid marks at the scene. None of the occupants in the car, including a back seat passenger, William Corbett, recalled any conversations, warnings or exclamations by anyone about potential danger in the roadway prior to impact. Nevertheless, Corbett saw two white lights in the distance shortly before impact, but was looking out the side window at the time of the accident. Plaintiff Howes, too, admitted seeing something with two white lights in the roadway before the accident. She said, "It looked like a, oh, van or something with the lights up above, a van or some kind of a—some kind of a piece of machinery or something...."

The driver's license of Mrs. Hulit was restricted to daylight driving. She died of cancer before trial and before she could be deposed. Howes testified that she and Mrs. Hulit were good friends and that she had ridden with Mrs. Hulit at nighttime prior to the date of the accident. She denied prior knowledge of the restricted license, but appellant asserts that certain of Howes' responses to questions suggest that she indeed knew of Hulit's visual impairments and her restricted driver's license.

Fultz and Johnson called an accident reconstructionist, David Lord, who testified that the white rear tractor lights and the red baler lights were visible for 1.3 miles and 0.35 miles, respectively, before the point of impact. Accordingly, assuming a closing speed of 25 m.p.h., he testified that 158 seconds would have elapsed from the first opportunity to see the white lights until impact, and 50 seconds would have elapsed between first sight of the red lights and impact. Lord estimated that the accident was still avoidable up to 59 feet before impact, assuming a reaction time of 2.5 seconds.

At the close of trial the jury returned a special verdict allocating 75% of the negligence to Hulit, 20% to Fultz and Johnson, and 5% to Howes. The jury fixed Howes' damages at $118,000,[1] which was later reduced to $112,000 by application of the 5% comparative negligence attributed to Howes by the jury.

In response to various post trial motions, the trial court granted a j.n.o.v. removing the 5% negligence allocated to Howes and granted a damages additur of $14,000 for permanent disfigurement. In granting the additur the trial court did not offer defendants the alternative of a new trial.

Fultz and Johnson now appeal from the memorandum decision and order on post trial motions dated December 2, 1987, and the amended judgment dated December 8, 1987. We affirm in part, reverse in part, and remand the case to the district court.

## II

**DID THE TRIAL COURT ERR IN REMOVING THE JURY FINDING THAT HOWES WAS 5% COMPARATIVELY NEGLIGENT?**

We hold that the trial court erred in granting the j.n.o.v. on the issue of Howes'

---

1. *"QUESTION NO. 5:* What is the total amount of damage sustained by plaintiff Anne Teresa Howes in the following five (5) categories:

| | | |
|---|---|---|
| (1) | Medical costs (past and future) | $ 50,000 |
| (2) | Permanent disfigurement | $ 1,000 |
| (3) | Impairment of capacity for work and inability to perform usual activities because of the injury | $ 5,000 |
| (4) | Reasonable value of necessary help in the home for past and future | $ 12,000 |
| (5) | Physical and mental pain and suffering (past and future) | $ 50,000 |
| | TOTAL: ... | $118,000" |

5% negligence. In determining whether a j.n.o.v. should have been granted, this Court applies the same standard as does the trial court which passed on the motion originally. Whether a verdict should be directed is purely a question of law and on those questions the parties are entitled to full review by this Court without special deference to the views of the trial court. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). Hence, this Court must review the record of the trial below and draw all inferences from the evidence in a light most favorable to the non-moving party to determine if there was substantial evidence to justify submitting the case to the jury. Based upon our review of the record on this standard, we conclude that there was substantial competent evidence to justify submitting the case to the jury. *Quick v. Crane, supra.*

At trial three different theories were advanced regarding Howes' negligence: (1) she knew that her long time friend (Hulit) had poor vision and that it was getting dark as they left Gooding to return to their home in Hailey; (2) she knew of Hulit's restricted driver's license, yet rode in the car knowing that Hulit would be driving after dark; and (3) while thus riding as a passenger she saw the lights of what she thought was either a van or a piece of machinery in the road, but did not warn Hulit of the impending danger.

These theories were supported by some evidence at trial, most of it originating from the plaintiff herself. First, when asked if she noticed anything in the roadway ahead before the impact with the hay baler, plaintiff replied that she saw something that "looked like a, oh, van or something with the lights up above, a van or some kind of a—some kind of a piece of machinery or something...." A little later plaintiff testified:

"Q. Okay, you thought you saw two white lights?

"A. Yes.

"Q. And you saw them at quite a distance?

"A. Yes.

"Q. And you were able to distinguish that there were two lights at quite a distance?

"A. Yes, there were two white lights at—

"Q. And at some point in time, you closed that distance, apparently, to where you could make a determination to yourself that there was a silhouette or something that reminded you of a van or something?

"A. Well, this was just like from a distance, it ... I never did determine what anything was. Definitely what anything was.

"Q. I realize that, but I believe that Mr. Smith asked you the question: Did you have any idea or concept of what it was that was in front of you? And you said: Well, it had this appearance of perhaps being a van. Do you recall that testimony?

"A. Yes, from a distance.

"Q. From a distance?

"A. Um-hum.

"Q. But was that a different distance than when you first saw or noticed the two white lights?

"A. Oh, I don't know. I mean I just—I don't know.

"Q. At the time that you were traveling on that road, you were a passenger in the front seat?

"A. Yes.

"Q. And you testified to Mr. Smith's question that you were looking forward?

"A. Yes.

"Q. Down the road. Did that continue right up to the time of impact?

"A. Well, as far as I know. I mean I was looking ahead, but ...

"Q. Did you notice that those lights appeared to get closer?

"A. Well, I don't ... I don't know. I mean, I don't know that they were ...

"Q. You weren't asleep?

"A. No. It just seemed to me like we were ... When we noticed it, when we were in the—it was right at the impact.

"Q. But you noticed the lights farther away first?

"A. Yes.

. . . .

"Q. Did you say anything prior to impact?

"A. No, not that I—not that I know of, I mean, just . . . It happened so fast, we were in it.

"Q. Okay. But to the best of your recollection today, at the time, you were still looking down the roadway at the time of impact?

"A. As far as I know."

Finally, when questioned regarding her knowledge of Hulit's restricted driving license, plaintiff Howes testified as follows:

"Q. Now, you testified to Mr. Smith's questions that you were not aware that Wilma [Hulit] had restrictions on daylight driving, or, on nighttime driving until after the accident, correct?

"A. That's correct.

"Q. Would you turn to Page 17 [of your earlier deposition]. Have you found Page 17?

"A. Yes.

"Q. Pardon?

"A. Yes.

"Q. Commencing at Line 15, the question by Mr. Harwood: 'Was it dark when you left Gooding?' Your answer: 'It was just—well, it was—it was still light, but it was getting—we were going to stop in Shoshone and Bill was going to drive.' Now, did I read that correctly?

"A. Yes.

"Q. Can you explain to me how that question and that answer can be responsive or related to each other unless you knew that Wilma was not to be driving at dark?

"A. I don't see what that has to do with it.

"Q. Why, in response to a question which asks you if it was dark, would you respond that you were going to stop in Shoshone and Bill was going to drive unless you knew that Wilma was not to drive at dark?

"A. That had nothing to do with me. I didn't . . . The arrangements had nothing to do with me."

After the presentation of this and all the other evidence, the jury, via Instruction No. 20, was instructed as follows:

"*A passenger in an automobile has a duty to exercise the care and caution for his or her own safety that a reasonably prudent person of the same age and maturity would exercise in the same circumstances.* Nevertheless, as a general rule and in the absence of special circumstances indicating the presence of imminent danger or the negligence of the driver, a passenger may rely on the driver to properly attend to the operation of the vehicle and to operate it with due care. A passenger's inattention or failure to observe the traffic and roadway does not constitute contributory negligence, *unless special circumstances and the passenger's awareness of certain dangers impose a greater degree of care* under the circumstances." (Emphasis added.)

■ After hearing plaintiff's own testimony quoted above, and after being so instructed by the court, the jury could well have found that plaintiff Howes was negligent. The record contains evidence upon which the jury may have found that plaintiff knew that her long time friend, Wilma Hulit, had visual impairments, perhaps even a restricted driver's license, yet she rode in the car knowing Hulit would be driving after dark. Also, she saw an object, like a van or a piece of machinery, in the road, yet she did not warn the driver of it. The foregoing was substantial competent evidence upon which the jury could have based its conclusion that Howes was 5% negligent, and both this Court and the trial court are bound by that jury determination. *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986); *Ross v. Coleman Co., Inc.*, 114 Idaho 817, 761 P.2d 1169, 1173 (1988) ("If [the jury's findings are supported by substantial competent evidence], then both the trial court and this Court are bound by the jury's verdict."); *Garrett Freightlines, Inc. v. Bannock Paving Co., Inc.*, 112 Idaho 722, 735 P.2d 1033 (1987); *Dinneen v. Finch*, 100 Idaho 620, 603 P.2d

575 (1979). Accordingly, we reverse the district court's j.n.o.v. on this issue.

## III

### DID THE TRIAL COURT ERR IN GRANTING AN ADDITUR WITHOUT OFFERING THE ALTERNATIVE OF A NEW TRIAL?

■ Following the jury verdict, plaintiff Howes moved for an additur of judgment based on the alleged inadequacy of the jury award of $1,000 for permanent disfigurement. In its memorandum decision and order on post trial motions, the trial court noted that it is required to compare the amount of the jury's damage award with the amount of damages which the trial court would have awarded sitting as a "thirteenth juror." With this in mind, the trial judge then found that an award of $1,000 for permanent disfigurement was insufficient; therefore, the court awarded an additur of $14,000, bringing the total permanent disfigurement award to $15,000. However, in ordering that additur, the court expressly stated that it did not find that the lesser award was the result of the jury's passion or prejudice.

■ We hold that the trial court's grant of the additur was error. Our prior cases of *Sanchez v. Galey*, 112 Idaho 609, 733 P.2d 1234 (1986), *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986), and *Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979), provide that an additur or a remittitur may only be granted as an alternative to the granting of a new trial. *See also Smallwood v. Dick*, 114 Idaho 860, 761 P.2d 1212 (1988). The law in this regard was most recently summarized in *Sawyer v. Claar*, 115 Idaho 322, 766 P.2d 792 (1988). In *Sawyer*, after discussing Idaho precedent, the Idaho Court of Appeals stated:

> "In sum, *Dinneen* and *Quick* do not countenance automatic substitution of a judge's damage award for that of the jury whenever the two differ. Rather, the trial judge must follow a carefully delineated process. First, the judge must weigh the evidence to determine

whether it supports the verdict. If the verdict could be sustained upon substantial evidence, but the trial judge nonetheless believes an injustice has occurred because the verdict is excessive or inadequate, then he must determine whether the jury appears to have acted under the influence of passion or prejudice. *See* I.R.C.P. 59(a)(5)." *Id.* at 324, 766 P.2d at 794.

In other words, the trial judge can grant an additur or remittitur only by offering a new trial as an alternative, and then only if he determines that the disparity between his evaluation of damages and the jury's award is sufficient to suggest that the jury's evaluation of damages was the result of passion or prejudice. In the instant case, however, the trial court expressly found that the jury's award was not the result of passion or prejudice, stating, "The Court does not find that the lesser award was the result of 'passion or prejudice.'" The predicate for awarding an additur, as an alternative to offering a new trial, then, was not present. Accordingly, we reverse the trial court's additur and remand with directions to enter a judgment on the jury verdict.

## IV

### DID THE TRIAL COURT ERR IN GIVING THE IDJI–APPROVED SPECIAL VERDICT FORM, RATHER THAN APPELLANT'S REQUESTED SPECIAL VERDICT FORM?

■ We hold that the trial court did not err in giving the IDJI-approved special verdict form. The questions propounded by appellant's special verdict form inquired regarding plaintiff Howes' "injuries." The IDJI-approved form, by way of contrast, utilizes the term "accident." Appellants argue that the jury might have assessed more comparative negligence to Howes if the special verdict form had been more appropriately worded.

While "[p]attern jury instructions and comments thereto are recommendatory, not mandatory," *Jerome Thriftway Drug, Inc. v. Winslow*, 110 Idaho 615, 620, 717 P.2d 1033, 1038 (1986), I.R.C.P. 51(a)(2) provides

in part, "Whenever the latest edition of Idaho Jury Instructions (IDJI) contains an instruction applicable to a case and the trial judge determines that the jury should be instructed on the subject, it is recommended that the judge use the IDJI instruction unless he finds that a different instruction would more adequately, accurately or clearly state the law." Appellants have shown nothing, other than unsupported speculation, that the giving of the IDJI-approved special verdict form was error, or that the failure to give their requested special verdict form would have more accurately stated the law or changed the result. There is nothing in the record to indicate that the jury would have come to a different conclusion had it been questioned regarding plaintiff's negligence in causing her own injuries, rather than plaintiff's negligence in causing the accident. Accordingly, we find no error in the trial court's giving of the IDJI-approved special verdict form in this case.

V

DID THE TRIAL COURT ERR IN GIVING INSTRUCTION NO. 25, RATHER THAN APPELLANTS' REQUESTED INSTRUCTIONS NOS. 16, 17, 18 AND 19?

■ The crux of this issue is the state of the law in Idaho regarding the movement of farm machinery at night at the time of the accident, August 27, 1985. Appellants argue that the trial court's reference to I.C. § 49–801A[2] was unnecessary and that,

2. Since trial and appellate briefing, I.C. § 49–801A has been amended and recodified as I.C. § 49–619.

3. "49–918. Temporary movement of harvesting machinery after darkness.—Notwithstanding any other provision of law, harvesting machinery may be moved during hours of darkness when said machinery is equipped, in addition, to those requirements set forth in chapter 8, title 49, Idaho Code, with a flashing amber-colored light at least four (4) inches in diameter clearly visible from in front of the machinery, a flashing red-colored light at least four (4) inches in diameter clearly visible from the back of said machinery, and said machinery is preceded by a well-lighted pilot vehicle or flagman at least 300 feet in advance of such vehicle to give warning

based on the court's instructions, the jury could have concluded that any movement of farm machinery on state highways after dark was totally prohibited unless flashing colored lights and a pilot vehicle were utilized. This, however, was the state of the law in 1985 when the accident occurred, and the court correctly so instructed the jury. On August 27, 1985, I.C. § 49–801A prohibited the movement of slow moving vehicles, including farm equipment, during the night. The only exception then applicable to the prohibition of I.C. § 49–801A was I.C. § 49–918 which permits harvesting machinery to be moved at night if accompanied by pilot cars and flashing colored lights.[3] It is undisputed that at the time of the accident the tractor/hay baler combination did not have a flashing red-colored light visible from the back of the machinery, nor was it accompanied by any pilot vehicles. Accordingly, the court's instruction in this regard was not in error and we affirm.[4]

VI

DID THE TRIAL COURT ERR IN GIVING INSTRUCTION NO. 18, RATHER THAN APPELLANTS' REQUESTED INSTRUCTION NO. 29?

■ Appellants' Requested Instruction No. 29 reads as follows:

"You are instructed that under the law of the State of Idaho that one negligent defendant may be obligated to pay a plaintiff for all or part of the money

of the approach of said equipment and followed by a well-lighted pilot vehicle or flagman at least 300 feet behind such vehicle to give warning of the presence of said equipment on the roadway ahead." [Since trial and appellate briefing, I.C. § 49–918 has been modified and recodified as I.C. § 49–1012.]

4. The purpose clause of the 1986 amendment to I.C. § 49–801A further emphasizes that farm vehicles were not allowed on the highway at night prior to the amendment. It states that the purpose of the amendment is "to provide an exception for movement of certain farm vehicles on highways, other than interstate highways, during a specified period," that period being from one-half hour after sunset to one-half hour before sunrise.

damages sustained by that plaintiff even though another defendant was found more negligent by way of percentage comparison.

"This concept is called joint and several liability. A defendant is not obligated to pay damages to a plaintiff only when no negligence is equal to or less than the plaintiff's negligence." (Sic.)

This instruction was refused, and the court instead gave Instruction No. 18, which reads:

"If you find that the plaintiff Anne Teresa Howes was guilty of negligence which was equal to or greater than that of the defendant Jack Johnson and/or Dennis Lee Fultz, then the plaintiff, Anne Teresa Howes, will not recover anything from defendant, Jack Johnson."

Appellants argue that the trial judge abused his discretion when he told the jury about the effect of their answers via this instruction. We disagree. Under *Seppi v. Betty*, 99 Idaho 186, 579 P.2d 683 (1978), whether to instruct the jury on the effect of its answers lies in the trial court's discretion. The reasons for our decision in *Seppi* are likewise applicable to the instant case:

"It would be incredibly naive to believe that jurors, after having listened attentively to testimony of the parties and a parade of witnesses and after having heard the arguments of counsel, will answer questions on a special verdict form without giving any thought to the effect those answers will have on the parties and to whether their answers will effectuate a result in accord with their own lay sense of justice. With respect to most questions, the jury would have to be extremely dullwitted not to be able to guess which answers favor which parties. In those instances where the legal effect of their answers is not so óbvious, the jurors will nonetheless speculate, often incorrectly, and thus subvert the whole judicial process.

"It is this latter problem, juries speculating on the effect of their answers, that creates a unique danger when the issues in a comparative negligence case in Ida-

ho are submitted to a jury in a special verdict form." 99 Idaho at 193, 579 P.2d at 690.

Accordingly, to alleviate the unique danger recognized in *Seppi*, its progeny, and this case, we again hold that it was appropriate for the trial judge to instruct the jury regarding the effect of their answers to the questions on the special verdict form.

The decision and judgment of the trial court are affirmed in part and reversed in part, and remanded to the trial court to enter a judgment on the jury's verdict consistent with this opinion. Each party will bear its respective costs and attorney fees on appeal.

SHEPARD, C.J., and JOHNSON, J., concur.

HUNTLEY, Justice, concurring and dissenting.

I concur in the majority opinion with the exception of Parts II and III. Part II reverses the trial court's granting a J.N.O.V. relative to an assignment of 5% comparative negligence to plaintiff.

The trial judge, who had a better overview than we of the evidence and its implications relative to causation stated:

1. Plaintiff's Motion for judgment Notwithstanding the verdict is granted as it relates to the jury's allocation of 5% negligence to Ann T. Howes. This apportionment can only be based on speculation on the part of the jurors, there being no evidence to support such a finding. The plaintiff was not negligent in any manner which could be a proximate cause of the accident.

I would defer to the trial court's assessment.

Part III of the majority opinion seeks to repeal I.R.C.P. 59(a)(6) which provides:

**Rule 59(a). New trial—Amendment of judgment—Grounds.—** A new trial may be granted to all or any of the parties and on all or part of the issues in an action for any of the following reasons:

. . . .

6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against the law.

It is understandable that *Dinneen* and *Quick,* which deal with passion and prejudice, being our most recent cases, pre-occupy our thinking. That does not excuse us from reading, knowing and applying the whole rule.

The focus of *Dinneen* and *Quick* was on I.R.C.P. subsection 59(a)(5) because that is the way the attorneys briefed and argued it.

The trial court's additur herein comes squarely within the "insufficiency of the evidence to justify the verdict" provision of I.R.C.P. 59(b)(6).

The last sentence of Part III of our Opinion should read:

Accordingly, we reverse the trial court's additur unless it is coupled with the offering of a new trial as an alternative.

BISTLINE, Justice, dissenting.

I.

Where a defendant moves a trial court for a new trial, the trial court in its discretion may (1) grant a new trial, or (2) deny a new trial but condition that denial on the plaintiff's filing a consent to accept a reduction in the jury's damages in such amount as the trial court finds to be excessive. This is known as the alternative of consenting to a remittitur, an evolvement of case-law precedent. *Checketts v. Bowman,* 70 Idaho 463, 220 P.2d 682 (1950). In that case the trial court concluded that a plaintiff's $40,000 verdict was excessive, and on that ground granted a new trial. On plaintiff's appeal, the Supreme Court agreed that the verdict was excessive. Because "new trials necessarily occasion delay, hardship and expense to the parties," and "no harm can arise from affording an opportunity to the plaintiff to avoid a new trial and obtain an immediate judgment for the lesser amount," the Supreme Court:

remanded with directions to the district court to vacate the order granting a new trial and to enter judgment on the verdict for the plaintiff's in the sum of $20,000, if ... the plaintiffs file a written consent to the reduction of the verdict and acceptance of judgment in the amount of $20,000, and in the event of plaintiff's failure to file such consent to give full effect to the order for a new trial.

70 Idaho at 468, 220 P.2d at 684–85.

Similarly, Idaho case law evolved the adoption of the use of an additur where a plaintiff moved for a new trial on the grounds that the evidence did not sustain a jury's verdict, in that the verdict was insufficient. The trial court on considering the motion could (1) grant it, or (2) deny it, on condition that the defendant file his consent to the entry of a judgment in such amount as the court determined that the jury should have at the least awarded on the basis of the evidence presented. *Fignani v. City of Lewiston,* 94 Idaho 196, 484 P.2d 1036 (1971).

Justice Bakes in his opinion has come fairly close to this view wherein he writes that "the trial judge can grant an additur or remittitur only by offering a new trial as an alternative ...," with which I agree other than for his particular phraseology. The grant is of a new trial; the alternative is that the other party may consent to a remittitur or an additur. But, not acceptable is his apparent understanding that as a prerequisite to taking any such action the court must find that the verdict was either too much or too little as "the result of passion or prejudice" on the part of the jury. (Bakes, J., p. 686, 769 P.2d at 563.)

Thus, taking himself astray, he proceeds to state that because the trial court expressly found no passion or prejudice, there was no "predicate for [an order] awarding an additur as an alternative to offering a new trial."

Justice Bakes is thus seen in error in stating that an excessive or inadequate award, absent the finding of passion or prejudice, will not sustain the grant or denial of a new trial with the attached conditions of, respectively, a consent to a remittitur or to an additur, as the case may be depending on whether a defendant or plaintiff is the moving party. Having thus laid a faulty cornerstone, he would reverse the

trial court's provision for additur. He concludes that granting the additur of $14,000 for permanent disfigurement without offering the defendants the alternative of a new trial was error.

Methinks that Justice Bakes does the trial court an injustice on this point. There is nothing in the court's ever-expanding me of procedural rules, to date at least, which spells out, or even purports to spell out, the specific language required to pursue the quest for an additur or a remittitur. As stated above, both have evolved from case law. Both have become adjunctive to either a defendant's motion for a new trial or a plaintiff's motion for a new trial.

In the case at bar the plaintiff's written motion for an additur was explicitly based on Rule 59. Implicit therein the relief sought was necessarily an alternative to a request for a new trial or damages on the issue of disfigurement damages. There is no such thing as a free-standing motion for an additur or for a remittitur. The trial judge has had many years of trial experience before condescending to enter public service, and it is ill-considered to suggest that he did not fully realize that the plaintiff's motion could only be pursued under the auspices of the rule which governs a trial court's grant of a new trial. Implicit therein, as I say, is that if the requisite consent to an additur is not filed, a new trial on damages *is* the only viable alternative. It is true, however, that the motion could have been better worded. Equally so, the trial court should have worded his order expressly to provide that, if the additur was not consented to, there would be a new trial.

Hopefully it will not offend counsel, the trial court, and my associates on this Court, to recommend that the *Fignani* case should be closely read, with special attention to this passage:

> However, as we held in the case of Ricard v. Gollen,
>> since the adoption of Idaho Rules of Civil Procedure, particularly Rules 50(b), 50(c), 59(c) and 59(d), failure to comply with the requirements of statutory Rule 10–604 does not ipso facto

oust the court of jurisdiction to grant a new trial.

Under Rule 59(d) the trial court could have ordered a new trial on its own motion. Our rejection of appellants' argument on this point is further buttressed by Rule 61, Idaho R.Civ.P., which provides in part that:

> No error ... by any of the parties is ground for ... vacating, modifying, or otherwise disturbing a judgment or order unless refusal to take such action appears to the court inconsistent with substantial justice....

The motion for a new trial was *in substantial compliance with the procedural requirements* for such a motion. Enumerated paragraph "1" of the motion specifies the particulars in which the evidence was alleged to be insufficient, and clearly infers that the motion was made on the basis of the record of the evidence adduced at trial. That is sufficient.

*Fignani v. City of Lewiston*, 94 Idaho 196, 198, 484 P.2d 1036, 1038 (1971) (emphasis added).

This case is essentially in the same posture as our very recent case of *Smallwood v. Dick*, 114 Idaho 860, 761 P.2d 1212 (1988), where a district court of the same district was said to have not considered its own authority to grant a new trial, independent of any such motions by the parties. This Court directed it to so consider.

Additionally, it is readily discernible that Justice Bakes has erred in relying upon and quoting from *Sawyer v. Claar*, 115 Idaho 322, 766 P.2d 792 (Ct.App.1988). Idaho case law does *not* require that the trial court in *all* instances must determine whether an excessive or inadequate verdict has resulted from a jury appearing to have acted under the influence of passion or prejudice. A trial court after going through the weighing process, and then the comparing process, will then make the determination of inadequacy or excessiveness, and accordingly rule on the motion for new trial. That is the teaching of *Checketts v. Bowman, supra*, where passion and prejudice was given no consideration in awarding a new trial, and in fact,

was specifically rejected. The trial court there held the verdict excessive. The Supreme Court agreed, and also unanimously decided by how much it was excessive.

Passion and/or prejudice was specifically ruled out by the trial court, and then on appeal was not in the Supreme Court's equation. The rule in place at the time of *Checketts* was:

> "[W]here it appears that the damages are so large as to indicate the influence of passion and prejudice in the verdict a new trial will be granted. If it appears that the verdict is excessive but passion and prejudice are not indicated, the court will reduce the verdict to the amount supported by the evidence making its acceptance optional."

(See excerpts in the attached Appendix A.) *Summerfield v. Pringle*, 65 Idaho 300, 144 P.2d 214 (1943).

## II.

A reversal of the trial court's order striking the jury's assessment of 5 percent comparative negligence to the plaintiff is not justifiable. On occasion this Court has been known to preach of the importance of a trial court's opportunity for assessing the credibility of the witnesses, as against this Court's confinement to a cold printed record. Hence, I stand utterly aghast at reading in Justice Bakes' opinion that there is *some evidence* which supports the defendant's theory of plaintiff's negligence, *i.e.*, that plaintiff knew of Hulit's restricted driver's license, yet rode in the car knowing that Hulit would be driving after dark. That "some evidence" is her flat-out unequivocal testimony that she was *not aware until after the accident*. As the trial judge himself stated in his written order, the jury had to be speculating when they found plaintiff 5 percent negligent. Justice Bakes thinks that the solution is found in plaintiff's pre-trial deposition where the plaintiff testified to an arrangement for the two other persons in the car, Hulit and Corbett, to switch seats after driving from Gooding to Shoshone, and Corbett would drive. The collision occurred before the group reached Shoshone.

It is extremely difficult for me to see how an appellate court in the second instance, and a jury in the first, can glean from that testimony a factual finding that plaintiff was aware of Hulit's eye problem. The plaintiff testified under oath that she was unaware. The trial judge by nature is conversant with sheer speculation; he heard her testify, and was in a far better position to assess her credibility as against one speculative inference which might have been drawn from the pre-arranged switch in drivers.

Equally so with the not-so-much-in plain view farm equipment. She saw "two lights at quite a distance," and only before impact, at night, knew that the two lights were attached to something, a silhouette or a van. Worse yet for her, she couldn't remember saying anything by way of warning the driver as the vehicles collided.

Justice Bakes would find her negligent on that skimpy evidence, or at least uphold a jury finding which did so. I disagree. Two white lights far ahead, and getting closer only on closing is not unusual. Likewise not making out to what the lights are attached, or which direction the lights are moving is hardly an *indication of the presence of imminent danger*, as the correct statement in instruction No. 20 informed the jury.

While it is true that the 5 percent assessment is not a monumental figure, it is absurd to hold this plaintiff in any way responsible for the happening of this accident and her resultant injuries. The facts of this case are such that the collision very likely was bound to happen, if one gives due consideration to all of the circumstances, which I do not see as being here realistically done.

My vote is to not interfere with the trial court's conclusions drawn after presiding over the trial and hearing and seeing the witnesses. Sheer speculation is not a worthy substitute for testimony found credible and conduct found to be basically faultless. I would accept that the plaintiff filed a Rule 59 motion, which is true, and remand with instructions to reconsider that motion in light of *Fignani*, 94 Idaho 196, 484 P.2d

1036, and *Smallwood*, 114 Idaho 860, 761 P.2d 1212.

A reversal in this case can only be justified if it is restricted to allowing the defendants the usual twenty days in which to file a consent to the additur, or otherwise face a new trial on damages.

### APPENDIX A

### ORDER.

This matter having theretofore come on for hearing upon the Motion for New Trial and Notice of Intention to move for a new trial, as filed by the defendants herein, plaintiffs being present by their counsel B.W. Davis and L.F. Racine Jr., and the defendants being present by their counsel O.R. Baum and Ben Peterson, and after submission of the same, the matter having been taken under advisement by the Court waiting the filing of briefs, and now, on this day, the court being fully advised in the premises and having heretofore announced its decision, and it appearing to the court that the verdict and damages returned in said cause was and is unreasonably excessive, NOW, THEREFORE,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED That the said Motion for New Trial be and the same is hereby granted by reason of the fact that said verdict is unreasonably excessive, and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED That a new trial on the ground aforementioned be and the same is hereby granted, and IT IS FURTHER ORDERED, ADJUDGED AND DECREED That the verdict heretofore made and entered in the above entitled matter be and the same is hereby set aside and the judgment entered therein shall be and the same is hereby set aside, for reasons aforementioned, and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED That said Motion for New Trial, as to the other grounds therein stated, be and the same is hereby denied.

LET NEW TRIAL BE HAD.

Dated this 5th day of January, 1949.

L.E. Glennon
DISTRICT JUDGE

FILED Jan. 5, 1949.

ORDER GRANTING NEW TRIAL, R., p. 323–24, *Checketts v. Bowman*, 70 Idaho 463, 220 P.2d 682 (1950).