700 P.2d 128

John C. YOUNG, a single man, and
Dorthy Y. Dailey, a single woman,
Plaintiffs-Appellants,

v.

Anne M. SCOTT, a single woman, and
Renee A. Youngs, a single woman,
Defendants-Respondents.

No. 14431.

Court of Appeals of Idaho.

April 30, 1985.

James H. Paulsen, Sandpoint, for plaintiffs-appellants.

Kevin Sullivan (St. Clair, Hiller, Wood and McGrath, Chartered), Idaho Falls, and Mark Vovos, argued, Spokane, for defendants-respondents.

BURNETT, Judge.

This litigation began when the owners of leased commercial property sued their former tenants for unpaid rent and for other losses. The tenants answered and counterclaimed, alleging that the landlords had failed to remodel the premises in a timely or workmanlike manner, as provided in the lease agreement. This failure, the tenants asserted, so severely impacted their business that they were forced to terminate the tenancy.

A jury found in the tenants' favor, awarding them compensatory and punitive damages while denying any recovery on the landlords' complaint. Upon the landlords' motion, the district judge granted a new trial—but only if the tenants refused to accept adjustments in the damage award. The tenants accepted the adjustments and judgment was entered accordingly. Still dissatisfied, the landlords filed this appeal. For reasons explained below, we affirm the judgment in part, vacate it in part and remand the case.

The landlords have raised numerous issues that can be consolidated into three principal questions. (1) Should the tenants' counterclaim have been disallowed for failure to comply with a notice requirement in I.C. § 6–320(d)? (2) Should the district court have granted the landlords a new trial unconditionally? (3) Were the adjusted awards of compensatory and punitive damages supported by the evidence? After reviewing the background facts, we will examine these questions in turn.

The property in question is a restaurant and bar known as the Priest Lake Lodge. In 1977, the owners, John Young and Dorthy Dailey, leased the property to Anne Scott, Renee Youngs and other tenants. In 1979, the lease was renewed exclusively with tenants Scott and Youngs. The renewed lease agreement, including a handwritten addendum, provided that the landlords would remodel part of the premises:

> It is agreed that the Lessors shall remodel the kitchen and install a walk-in-box, subject to the availability of [a relative of one of the Lessors] to do the work involved. Lessor[s] will make every effort to install the walk-in-box in a temporary manner before hot weather in 1979.

. . . . .

> In addition to the terms of the existing lease it is agreed that Lessor[s] shall repair and remodel the kitchen and plumbing of said premises before the winter period of 1979; or [L]essors shall continue maintenance of same until remodel [sic] is complete.

The phrase "before hot weather in 1979" was inserted because the lodge depended primarily upon the tourist trade attracted to Priest Lake in the summer. The landlords did not begin the remodeling in earnest until May, 1980. The work continued until mid-June. While this work was in progress, the lodge was closed for business. The tenants asserted that the required remodeling never was entirely completed.

The tenants fell behind in paying rent that summer. When the landlords gave notice of intent to declare a default, the tenants quit the premises. This lawsuit followed.

I

We first consider the landlords' argument that the tenants' counterclaim should have been disallowed under I.C. § 6–320. This statute is part of title 6, chapter 3, of the Idaho Code, dealing with

forcible entry and unlawful detainer. It governs a lawsuit by a tenant in possession who seeks damages or specific performance for the landlord's failure to make the leased premises habitable or to return a security deposit. Subsection (d) provides:

Before a tenant shall have standing to file an action under this section he must give his landlord three (3) days written notice, listing each failure or breach upon which his action will be premised and written demand requiring performance or cure. If, within three (3) days after service of the notice, any listed failure or breach has not been performed or cured by the landlord, the tenant may proceed to commence an action for damages and specific performance.

The tenants gave no written notice of the type specified in I.C. § 6-320(d). The landlords now would have us hold that the tenants lacked standing to make any claim against the landlords. We are not persuaded that the statute applies to this case. The tenants did not "file an action." Rather, they responded by way of answer and counterclaim to an action brought by the landlords. The landlords' complaint did not allege forcible entry or unlawful detainer. It sought to collect rent and to recover other losses from tenants no longer in possession. Moreover, the tenants' counterclaim did not allege that the landlords had failed to make the premises habitable or to return a security deposit. It sought damages for constructive eviction and wrongful termination of the lease, due to the landlords' failure to complete the remodeling of a commercial facility in the time and manner prescribed by the lease agreement. Neither the complaint nor the counterclaim fell within the purview of title 6, chapter 3. Accordingly, we hold that notice under I.C. § 6-320(d) was not required in order for the tenants to assert their counterclaim.

## II

The landlords next argue that the district court should have granted their motion for a new trial unconditionally. As noted above, the court granted the motion only if the tenants refused to accept adjustments in the compensatory and punitive damage awards. The jury had awarded $30,050 in compensatory damages and $5,000 in punitive damages. The district judge ruled that the verdict had been influenced by passion or prejudice because it appeared that there was insufficient evidence to support the compensatory damage award. The judge deemed the award excessive. Conversely, the judge ruled that the evidence failed to support the amount of punitive damage awarded, which the judge deemed to be insufficient. The judge offered a $25,000 remittitur in the compensatory award, together with a $4,000 additur to the punitive award, as an alternative to a new trial. The net result was a compensatory award of $5,050 and a punitive award of $9,000. The tenants accepted this result and avoided the new trial.

A motion for new trial is addressed to the district judge's discretion. On appeal we will not disturb the judge's grant or denial of the motion unless an abuse of discretion is shown. *E.g.*, *Luther v. Howland*, 101 Idaho 373, 613 P.2d 666 (1980). Here, the grounds stated by the district judge for setting aside the jury's damage awards—passion or prejudice and insufficient support in the evidence—were cognizable under I.R.C.P. 59(a), the rule governing motions for new trials. When cognizable grounds for a new trial have been established, the district court has two options. The court may grant a new trial as requested or it may condition the grant upon the nonmoving party's rejection of a suggested reduction in, or addition to, the damages awarded, in conformity with the court's view of the evidence. *Ricard v. Gollen*, 91 Idaho 335, 421 P.2d 130 (1966). As is the case with an unconditional grant or denial of a new trial, the nonbinding offer to modify a verdict by additur or remittitur will not be disturbed on appeal unless an abuse of discretion is shown. *Id.* at 337, 421 P.2d at 132. Of course, the district court's discretion in offering such a modification is not unlimited. The district court may not offer an additur or remit-

titur where the jury's entire verdict, including the determination of liability, is tainted by passion or prejudice. *Hubble v. Record,* 80 Idaho 403, 331 P.2d 270 (1958). But where, as here, the passion or prejudice is limited to—indeed, inferred from—an excessive damage award, the court may offer a remittitur. *Id.* at 410, 331 P.2d at 274.

█ It is implicit in the foregoing discussion that the judge may not peremptorily modify an award over the objection of the party adversely affected. To do so would be tantamount to entering a judgment n.o.v.—a disposition not subject to the deferential review accorded to an exercise of discretion. However, the court may suggest an adjustment in the damage award and order a new trial if the suggestion is rejected. *See Dimick v. Schiedt,* 293 U.S. 474, 480, 55 S.Ct. 296, 298, 79 L.Ed. 603 (1935). Here, the judge offered both a remittitur and a smaller additur. In effect, he offered a net remittitur which the tenants, the parties adversely affected, accepted. Accordingly, we hold that the conditional grant of a new trial was within the judge's sound discretion. The judge did not abuse that discretion by refusing to grant a new trial unconditionally.

### III

We now turn to the judgment ultimately entered. The landlords assert that the damage awards, even when adjusted by the remittitur and additur, were unsupported by the evidence.

### A

█ The compensatory damage award of $5,050, as reduced by the remittitur, consisted in part of $4,400 in lost profits—including salaries anticipated by the tenants—during 1980. When a tenancy is terminated by wrongful conduct of the landlord, resulting in cessation of a going business, lost profits may be awarded as an element of compensatory damages. RESTATEMENT (SECOND) OF PROPERTY § 10.2 (1974); *Galindo v. Hibbard,* 106 Idaho 302, 678 P.2d 94 (Ct.App.1984). It has been said that the loss of anticipated prof-

its must be shown with "reasonable certainty." *Jolley v. Puregro Co.,* 94 Idaho 702, 706, 496 P.2d 939, 943 (1972). However, the phrase "reasonable certainty" has been interpreted to "require only that the damages be taken out of the realm of speculation." *Circle C Ranch Co. v. Jayo,* 104 Idaho 353, 356, 659 P.2d 107, 110 (1983). The calculation of lost profits must be based upon evidence which leads to a reasoned conclusion. *Nora v. Safeco Insurance Co.,* 99 Idaho 60, 577 P.2d 347 (1978).

█ Here, the two tenants operated the business as a partnership. One of the tenants, Renee Youngs, acted as the partnership accountant and bookkeeper. She presented evidence establishing the gross sales, expenses, salaries and net profit or loss for the years 1978 and 1979. She also furnished a partial summary for those months during 1980 when the business was operating. From these figures she projected the business income and expenses for all of 1980, if the tenancy had not been terminated. This projection showed that if the business had continued to operate it would have grossed approximately $62,340 in 1980. Of that amount, $52,000 would have been paid out in expenses, together with $9,000 in salary. This would have left the business with a net profit after salaries of about $1,340. This projection assumed an increase in gross sales of 25% to 30% over the preceding year, based upon increases realized between 1977 and 1979. Upon these figures, the tenants claimed losses of $1,340 in net profit plus $3,060 in lost salaries, the latter figure representing the difference between $9,000 in anticipated salaries and $5,040 in salaries actually paid during 1980. We believe the tenants established their damages of $4,400 upon substantial evidence leading to a reasoned conclusion. Although the evidence was in some respects disputed, the district judge was entitled to rely upon it in determining the proper amount of adjusted compensatory damages. The judge's determination is subject to the "clearly erroneous" standard of review under I.R.C.P. 52(a), and we find no clear error on this point.

■ The landlords have argued that no award of lost profits was appropriate because the business had never shown a "profit" in the past. However, a past history of profit is not a categorical prerequisite to recovering for the loss of anticipated profits. *Galindo v. Hibbard, supra.* In any event, the landlords' argument is largely a play upon semantics in the tenants' accounting method. Prior to 1980 the tenants had drawn salaries from the business and had deducted them as expenses against gross income. This resulted in the business showing a loss but the tenants actually realizing a gain. If the tenants had not drawn salaries, or if the salaries had been funneled back into the business, the partnership would have shown profits.

■ The landlords further contend that the court should have reduced the award of lost profits and salaries by the amounts the tenants earned in other employment during 1980. This argument may have merit. Tenants must take reasonable steps to mitigate their losses following termination of the tenancy. RESTATE-MENT, *supra,* at § 10.2, comment i. However, the district judge made no finding as to whether the tenants' outside earnings were in lieu of, or in addition to, their lost salaries at the Priest River Lodge. Neither did he determine whether such outside earnings were used to pay any expenses connected with the lodge. These questions are material to deciding whether the outside earnings represented mitigation of damages and should have been offset, wholly or in part, against the compensatory award. The answers to the questions are not, in our view, obvious from the record. Accordingly, a remand is appropriate. *Pope v. Intermountain Gas Co.,* 103 Idaho 217, 646 P.2d 988 (1982). The compensatory award must be vacated for this purpose.

### B

As noted earlier, the jury awarded punitive damages of $5,000 and the district judge increased the award to $9,000. The landlords have challenged the propriety of awarding any punitive damages in a case involving a breach of contract. They also maintain that the adjusted amount of the award is excessive. We disagree.

■ It is well settled that a breach of contract may give rise to punitive damages. "[N]umerous situations arise where the breaking of a promise may be an extreme deviation from standards of reasonable conduct, and when done with knowledge of its likely effects, may be grounds for an award of punitive damages." *Linscott v. Rainier National Life Ins. Co.,* 100 Idaho 854, 860, 606 P.2d 958, 964 (1980). *See also Davis v. Gage,* 106 Idaho 735, 682 P.2d 1282 (Ct.App.1984). Here, the tenants presented substantial, though disputed, evidence that the landlords sought to terminate the lease. The remodeling was delayed until early summer, leaving the tenants without income during an ordinarily busy period. One of the tenants and her daughter testified that landlord John Young had expressed a desire to tear up the lease and board up the restaurant. In addition, evidence was presented to show that the tenants' personal property had been taken by the landlords and moved about in an attempt to conceal its location. This evidence was sufficient to support the jury's award of punitive damages.

The next question is whether the amount of $9,000 is also supported by the evidence. In *Cox v. Stolworthy,* 94 Idaho 683, 496 P.2d 682 (1972), our Supreme Court defined three categories of cases meriting awards of punitive damages. The first category involved deceptive business schemes; the second consisted of threats to physical well-being; and the third was characterized by nonviolent, but nevertheless serious, disputes between parties concerning property or a business operation. *Id.* at 691, 496 P.2d at 690. In the third category *Cox* limited the amount of punitive damages to the claimants' attorney fees and other expenses related to the litigation. Here, the district judge found, upon substantial evidence, that the tenants' reasonable attorney fees alone would have amounted to $9,000.

512

After this case was tried, the Supreme Court overruled *Cox* in part. *See Cheney v. Palos Verdes Investment Corp.*, 104 Idaho 897, 665 P.2d 661 (1983). In *Cheney* the Court did not disturb the general law governing the types of cases in which punitive damages are authorized, as set forth in *Cox.* Rather, the Court removed the categorical limits upon the amounts of punitive damages in each type of case. Thus, *Cheney* did not diminish, it enhanced, the measure of punitive damages previously awardable under the *Cox* criteria. We find nothing in *Cheney* that would require setting aside the punitive damage award in this case.

The landlords have urged that because the punitive award exceeds the compensatory award, it is disproportionate and excessive. We disagree. When the amount of a punitive award is supported by the evidence, it will not be overturned merely because it is greater than the compensatory award. *See, e.g., Umphrey v. Sprinkel*, 106 Idaho 700, 682 P.2d 1247 (1983). A punitive award may be made even if compensatory damages are nominal. *Davis v. Gage, supra.* The landlords also have contended that the punitive award was tainted by allowing the tenants to inquire at trial concerning the landlords' net worth. However, it is clear that the district judge, by placing the case in the third *Cox* category, fixed the punitive award without regard to the landlords' wealth. Moreover, even if the *Cox* limitation upon the measure of punitive damages had been disregarded, it still would have been permissible to admit evidence of net worth for the purpose of weighing the deterrent effect any award would have upon the landlords. *Umphrey v. Sprinkel, supra.* We conclude that the punitive damage award should not be disturbed.

Accordingly, the judgment of the district court, as it relates to punitive damages, is affirmed. The judgment is vacated with respect to compensatory damages and the case is remanded for findings concerning mitigation of damages. We note that the lease agreement provides for attorney fees to be awarded the prevailing party in any action to enforce the terms of the lease. Because our opinion today does not wholly favor any party, but leaves a potentially important question to be decided by the district court, we deem it premature to award attorney fees on appeal. However, the district court, when determining the prevailing party on remand, may take this appeal into consideration when fixing the amount of any additional attorney fees awarded. *Paloukos v. Intermountain Chevrolet Co.*, 99 Idaho 740, 588 P.2d 939 (1978). In view of appellants' late filing of their brief, following extensions of time by the Clerk of the Supreme Court/Court of Appeals, we award costs on appeal, exclusive of attorney fees, to respondents.

WALTERS, C.J., and SWANSTROM, J., concur.