# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46936

| | |
|---|---|
| DANA R. MCCANDLESS and MABEL ROBIN BLACKEAGLE, husband and wife, ) ) ) | |
| Plaintiffs-Appellants, ) ) | Boise, April 2020 Term |
| v. ) ) | Opinion filed: June 11, 2020 |
| MAX E. PEASE, ) ) | Melanie Gagnepain, Clerk |
| Defendant-Respondent, ) ) | |
| and ) ) | |
| BRENT WEDDLE, CHARLES WEDDLE, and JOHN DOES 1-5, ) ) ) | |
| Defendants. ) | |

Appeal from the District Court of the Second Judicial District of the State of Idaho, Nez Perce County. Jeff M. Brudie, District Judge.

The judgment of the district court is <u>affirmed</u>.

Robin D. Dunn, Dunn Law Offices, PLLC, Rigby, for Appellants.

J. Nick Crawford, Brassey Crawford, PLLC, Boise, for Respondent.

---

MOELLER, Justice

This appeal concerns personal injury and property damage claims arising from a motor vehicle collision. On June 30, 2011, Max E. Pease failed to stop his vehicle before rear-ending Brent Weddle's vehicle. The force of the collision caused Weddle's vehicle to cross over into oncoming traffic and collide with a pickup truck owned by Mabel Robin Blackeagle. Dana R. McCandless was the driver of the pickup truck and Blackeagle was a passenger. A Nez Perce County jury found Pease and Weddle negligent and awarded damages as a result. Dissatisfied with the amount of the verdict, McCandless and Blackeagle moved for a new trial on the issues

1

of comparative negligence and damages, and asserted additional issues of impropriety that occurred throughout the trial. The district court granted their motion in part and ordered a new trial unless Pease agreed to an additur of $4,000. Pease accepted the additur. McCandless and Blackeagle now appeal the district court's order on their motion for a new trial. For the reasons stated below, we affirm the district court's order.

## I.       FACTUAL AND PROCEDURAL BACKGROUND

On June 30, 2011, McCandless was driving Blackeagle's 2005 Dodge Ram 250 pickup truck eastbound on U.S. Highway 12 in Idaho County, with Blackeagle riding in the passenger seat. Pease and Weddle were both traveling westbound on U.S. Highway 12, with Weddle's vehicle following directly behind Pease's vehicle. Weddle passed Pease and then stopped in the middle of the westbound lane to make a left turn. Pease failed to observe Weddle's stopped vehicle and collided into the back of it. The force caused Weddle's vehicle to cross over into the eastbound lane and collide with Blackeagle's pickup truck.

On June 27, 2013, McCandless and Blackeagle (collectively "Appellants") filed a complaint against Weddle and Pease. Appellants alleged that they suffered personal injuries and damage to their property in the accident due to the negligence of Weddle and Pease. Prior to trial, Appellants settled with Weddle and he was dismissed from the action.

Following two days of testimony at trial, the case was submitted to the jury. The jury returned a special verdict, finding both Pease and Weddle negligent. The jury allocated fault 75% to Pease and 25% to Weddle. The jury awarded total damages of $36,600. This consisted of "property damages" of $15,500, McCandless's "actual expenses" of $4,900 and "general damages" of $5,000, and Blackeagle's "actual expenses" of $10,200 and "general damages" of $1,000. Pursuant to the jury's allocation of comparative negligence, the court reduced the jury's award by 25%, resulting in a total damage award of $27,450.[1]

Appellants moved for a new trial arguing that "[t]he jury verdict does not conform to the evidence on the issues of liability and on damages." Appellants asserted four legal bases: (1) irregularity in the proceedings of the court, jury, or adverse party (I.R.C.P. 59(a)(1)(A)); (2) misconduct by the jury (I.R.C.P. 59(a)(1)(C)); (3) inadequate damages, appearing to have been given under the influence of passion or prejudice (I.R.C.P. 59(a)(1)(F)); and (4) insufficiency of

---

[1] The district court later reduced the damage award by the amount paid by insurance.

the evidence to justify the verdict or other decision, or that it is against the law (I.R.C.P. 59(a)(1)(G)).

As to liability, Appellants argued that "[t]he jury went against the great weight of evidence" and found Pease only 75% at fault when liability should have been a non-issue. As to damages, Appellants argued that the jury's entire award was not supported by the evidence. Regarding property damages, Appellants argued that the jury must have guessed when they valued Blackeagle's pickup truck at $15,500 because the evidence supported a value between $46,000 and $49,000. Regarding actual expenses, which consisted of medical expenses and lost wages, Appellants argued that "[t]he totals given by the jury match no [medical] records in evidence" and the jury failed to award anything for lost wages despite the evidence supporting the claim. Finally, regarding general damages, Appellants argued that the jury's award was so nominal "as to shock the conscience of the court" and "suggest the jury was inflamed or acting with passion."

Appellants also argued that there were several "other" issues that warranted a new trial. First, Appellants argued that Blackeagle is Native American, yet the Nez Perce County jury contained "none of her peers." Second, Appellants argued that they were denied a fair trial because they were not allowed to mention that Pease had insurance due to the restrictions found in Idaho Rule of Evidence 411, which they argued is unconstitutional. Finally, Appellants argued that they were denied due process because the district court refused to subpoena Dr. Anne P. McCormack, the out-of-state doctor retained by Pease to perform Independent Medical Examinations (IME) on Blackeagle and McCandless.

On March 28, 2019, the district court entered its order on Appellants' motion for a new trial. Relying on Rule 59(a)(1)(F), the district court found that although there was some disparity between the jury's valuation of property damages and actual expenses, it was not so great that it could determine the jury was influenced by passion or prejudice. However, the district court found Blackeagle's significantly smaller award of $1,000 for general damages as compared to McCandless's award of $5,000 to be "unusual." The court explained that, had it been the trier of fact, "it would have granted general damages in approximately equal amounts to McCandless and Blackeagle." As such, the court held that the $1,000 award "appears to [have] be[en] given under the influence of passion or prejudice," thereby providing grounds for a new trial.

3

Nevertheless, the court decided that the issue could better be resolved with an additur.[2] Therefore, the court granted a new trial unless Pease accepted an additur of $4,000.

As for Appellants' "other" arguments, the district court found no basis to hold Rule 411 unconstitutional. The court also did not permit Appellants to subpoena Dr. McCormack, the IME examiner who was also Pease's retained expert witness, because, "[a]s an expert retained by [Pease], I.R.C.P. 26(4)(A)(v) prevented [Appellants] from contacting Dr. McCorm[a]ck," let alone from subpoenaing her. Appellants also failed to show error in their inability to call Dr. McCormack because "[i]f [Appellants] wished to rebut the report of Dr. McCorm[a]ck they were capable of hiring similar experts to offer contrasting opinions." The court did not address Appellants' argument regarding the racial makeup of the jury.

On April 1, 2019, Pease accepted the $4,000 additur to the jury's damage award. Accordingly, the district court did not order a new trial. Appellants timely appealed.

## II.     STANDARD OF REVIEW

"The decision by a trial court to grant or deny a motion for a new trial rests within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of a clear and manifest abuse of discretion." *Litke v. Munkhoff*, 163 Idaho 627, 632, 417 P.3d 224, 229 (2018) (quoting *Barnett v. Eagle Helicopters, Inc.*, 123 Idaho 361, 363, 848 P.2d 419, 421 (1993)). Accordingly, "[t]he standard of review applicable to a district court's decision to grant or deny a new trial under Idaho Rule of Civil Procedure 59(a) is abuse of discretion." *Id.* (internal citation omitted). Moreover, "[a] trial court's grant of additur is reviewed for abuse of discretion." *Ellefson v. Palmer*, 162 Idaho 393, 398, 397 P.3d 1152, 1157 (2017).

When this Court reviews an alleged abuse of discretion by a trial court, the Court considers the following: "Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

---

[2] An "additur" is "[a] trial court's order, issued usu[ally] with the defendant's consent, that increases the jury's award of damages to avoid a new trial on grounds of inadequate damages." *Additur*, Black's Law Dictionary (11th ed. 2019); *see also* I.R.C.P. 59.1 (explaining the procedure for conditionally granting or denying a new trial subject to an additur or remittitur).

# III. ANALYSIS

## A. Although Appellants' arguments on appeal are frequently inadequate and difficult to discern, they are not so lacking in coherency that we decline to address them.

Preliminarily, Pease contends that we should decline to address Appellants' arguments on appeal because they are nothing more than a general disagreement with the district court's ruling. According to Pease, Appellants fail to assert *how* the district court abused its discretion. Pease also contends that Appellants' arguments are not supported by cogent argument and authority. Although we agree that most of Appellants' arguments are inadequately supported with cogent argument and authority and at times are difficult to discern, some are coherent enough that we will address those on appeal.

Idaho Appellate Rule 35(a)(6) provides that the arguments of the parties "shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." This Court "will not consider an issue not 'supported by argument and authority in the opening brief.' " *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (quoting *Jorgensen v. Coppedge*, 145 Idaho 524, 528, 181 P.3d 450, 454 (2008)). Moreover, "[a] general attack on the findings and conclusions of the district court, without specific reference to evidentiary or legal errors, is insufficient to preserve an issue." *Id.* Consequently, "to the extent that an assignment of error is not argued and supported in compliance with the I.A.R., it is deemed to be waived." *Dawson v. Cheyovich Family Tr.*, 149 Idaho 375, 383, 234 P.3d 699, 707 (2010).

Here, Appellants barely engaged with the legal reasoning underlying the district court's decision. Rather, Appellants tended to make the same arguments before this Court as they did before the district court, merely reiterating that they are entitled to a new trial without demonstrating how the district court erred. Moreover, while Appellants' ultimate goal is clear—they want a new trial—they fail to present relevant argument and authority to support several of their arguments to achieve such a remedy. That said, we will address those arguments that were properly raised below and adequately supported by sufficient citations to the record and relevant authority on appeal. Although we address some of Appellants' arguments, "[t]hat does not necessarily mean that the arguments we address were presented in a cogent manner but merely that they were asserted to the extent that the Court deemed them to have been marginally raised." *Bach*, 148 Idaho at 791, 229 P.3d at 1153.

5

**B. The district court did not abuse its discretion in denying Appellants a new trial based on the jury's apportionment of comparative fault or its award of property damages and actual expenses.**

In the proceedings below, Appellants moved for a new trial on four legal bases: (1) irregularity in the proceedings of the court, jury, or adverse party (I.R.C.P. 59(a)(1)(A)); (2) misconduct of the jury (I.R.C.P. 59(a)(1)(C)); (3) inadequate damages, appearing to have been given under the influence of passion or prejudice (I.R.C.P. 59(a)(1)(F)); and (4) insufficiency of the evidence to justify the verdict (I.R.C.P. 59(a)(1)(G)). Each basis is discussed below.

    *i.      I.R.C.P. 59(a)(1)(A)—irregularity in the proceedings of the court, jury, or adverse party and I.R.C.P. 59(a)(1)(C)—misconduct of the jury.*

Appellants contend that they are entitled to a new trial due to misconduct by the jury and irregularities in the proceedings, which resulted in the jury finding Pease only partially at fault and awarding "unusual monetary awards." According to Appellants, these irregularities were the result of (1) defense counsel's improper objections and statements at trial and (2) the jury's bias for Pease who was an "elderly man." However, Appellants have failed to prove any misconduct by the jury or irregularities in the proceedings, let alone any misconduct or irregularities that actually affected the outcome of the trial.

Idaho Rule of Civil Procedure 59(a)(1)(A) provides that a new trial is warranted where there is an irregularity in the proceedings of the court, jury, or adverse party. "[W]hether an irregularity in the proceedings merits a new trial, a district court takes into consideration whether the irregularity had any effect on the jury's decision." *Schmechel v. Dille*, 148 Idaho 176, 180, 219 P.3d 1192, 1196 (2009) (quoting *Gillingham Const., Inc. v. Newby-Wiggins Const., Inc.*, 142 Idaho 15, 23, 121 P.3d 946, 954 (2005)).

Idaho Rule of Civil Procedure 59(a)(1)(C) provides that a new trial is warranted where there is proven juror misconduct. "When a motion for a new trial is made because of juror misconduct, the district court must determine whether there has been 'a showing that prejudice reasonably could have occurred.' " *Levinger v. Mercy Med. Ctr., Nampa*, 139 Idaho 192, 196, 75 P.3d 1202, 1206 (2003) (quoting *Leavitt v. Swain*, 133 Idaho 624, 629, 991 P.2d 349, 354 (1999)). Before reaching that question, however, "the party seeking a new trial must demonstrate that juror misconduct occurred." *Id.*

*a. Defense counsel's alleged improper statements and objections at trial.*

Appellants contend that irregularities in the proceedings occurred when defense counsel made improper statements and objections during closing argument that biased the jury. These include defense counsel's statement that (1) Appellants failed to disclose the $5,000 McCandless was allegedly to receive for a roofing job he could not start because of the accident and (2) "the evidence shows" that Blackeagle's 2005 Dodge Ram 250 pickup truck had a value "somewhere in the neighborhood of twenty to thirty thousand dollars." According to Appellants, the roofing income was disclosed and the evidence at trial supported a value for the pickup truck between $45,000 and $49,000, not $20,000 and $30,000.

Regarding defense counsel's alleged inaccurate statement that the roofing income was never disclosed, Pease contends that Appellants have failed to satisfy their burden of proving either jury misconduct or irregularity in the proceedings because defense counsel never made this statement at trial. Pease is correct. A review of the trial transcript confirms that defense counsel never made this statement. Of course, this likely explains why Appellants also failed to make a contemporaneous objection to this alleged misstatement. Accordingly, Appellants' contention that the jury was somehow affected by this statement lacks any merit.

Regarding defense counsel's alleged inaccurate statement that "the evidence shows" Blackeagle's Dodge Ram 250 pickup truck had a value "somewhere in the neighborhood of twenty to thirty thousand dollars," Pease contends that Appellants have waived this argument because they failed to object to it at trial. Pease is correct. It is well-established that this Court "will not consider an alleged error on appeal unless a timely objection to the alleged error was made at trial." *Slack v. Kelleher*, 140 Idaho 916, 921, 104 P.3d 958, 963 (2004). Here, defense counsel remarked in closing argument that "the evidence shows" the pickup truck's value is "somewhere in the neighborhood of twenty to thirty thousand dollars." According to Appellants, defense counsel's statement was inaccurate because the evidence actually supported a value much higher than that. However, Appellants failed to object to the statement at trial. By failing to object when the statement was made, the issue was not preserved for appeal.

*b. The jury's alleged bias for Pease who was an "elderly man."*

Appellants contend that the jury sympathized with Pease because he was an "elderly man." According to Appellants, the jury's bias resulted in them finding Pease only 75% at fault and Pease's co-defendant, Weddle, 25% at fault when "[c]omparative negligence should have

7

been a nonissue." Pease, on the other hand, contends that the record supports the jury's verdict as to the relevant levels of comparative negligence. We hold that Appellants have failed to prove that the jury's finding of liability was the result of jury bias caused by Pease's age.

We initially note that it is rank speculation for Appellants to assert that the jury was either sympathetic to Pease, or unduly influenced by his testimony, due to his age. Appellants' counsel pointed to nothing in the record to support these assertions. Additionally, because no transcript of the voir dire portion of the trial was included in the record, the Court has no way of knowing whether counsel even questioned prospective jurors about such concerns. No evidence was offered suggesting that bias arose amongst the jurors before, during, or after their deliberations.

Appellants point to three statements from Pease wherein he allegedly claimed full responsibility for the car accident, thereby apparently making liability a "non-issue." First is Pease's statement to the police that he should have been "more alert." Second is Pease's deposition testimony that he was "15-20 seconds behind Weddle." Third is Pease's answer to "Interrogatory 13" wherein he explained that Weddle was "100 yards in front" of him. According to Appellants, these statements prove Pease was 100% at fault. Notwithstanding these statements by Pease, and the weight Appellants place on them, the jury still could have reasonably found that Weddle's actions contributed to the accident. Specifically, at trial Pease explained to the jury that Weddle came "zipping by" to pass him and then suddenly stopped in front of him. Weddle also admitted to passing Pease and stopping in front of him to make a left turn. Moreover, liability was never a "non-issue," as suggested by Appellants. Appellants stated during opening argument that the jury was first to "determine who is at fault" between Pease and Weddle. Appellants have failed to prove that the jury's apportionment of comparative negligence was incorrect, let alone the result of bias.

In sum, Appellants have failed to satisfy their burden of proving any misconduct by the jury or irregularities in the proceedings due to defense counsel's alleged improper objections and statements at trial and the jury's alleged bias. Accordingly, the district court did not abuse its discretion when it denied Appellants a new trial under either Rule 59(a)(1)(A) or Rule 59(a)(1)(C).

  ii.   *I.R.C.P. 59(a)(1)(F)—inadequate damages, appearing to have been given under the influence of passion or prejudice.*

Appellants contend that they are entitled to a new trial under Idaho Rule of Civil Procedure 59(1)(1)(F) because the jury's award of actual expenses and property damages is

8

"impossible," a "blatant error," and inconsistent with the evidence and testimony presented at trial, and therefore, must have been influenced by passion or prejudice. Pease contends that the district court did not abuse its discretion when it denied Appellants a new trial based on the jury's award of actual expenses and property damages because the court weighed the evidence and properly reached a decision that was within its discretion. We hold that the district court did not abuse its discretion in denying Appellants a new trial based on the jury's award of property damages and actual expenses.

Idaho Rule of Civil Procedure 59(a)(1)(F) provides that a new trial is warranted "where the jury's determination of damages appears to have resulted from passion or prejudice." *Kuhn v. Coldwell Banker Landmark, Inc.*, 150 Idaho 240, 248, 245 P.3d 992, 1000 (2010). To determine "whether damages are excessive or inadequate, the district court must weigh the evidence and compare the jury award with the award that it would have imposed." *Id.* "If the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice, the verdict ought not to stand." *Litke*, 163 Idaho at 633, 417 P.3d at 230 (quoting *Quick v. Crane*, 111 Idaho 759, 768, 727 P.2d 1187, 1196 (1986)). "[R]espect for the collective wisdom of the jury and the function entrusted to it under our constitution suggests the trial judge should, in most cases, accept the jury's findings even though [s]he may have doubts about some of their conclusions." *Id.* (alteration in original) (quoting *Quick*, 111 Idaho at 768, 727 P.2d at 1196).

> [S]ince it is a jury function to set the damage award based on its sense of fairness and justice, the trial judge must defer to the jury, *unless* it is apparent to the trial judge that there is a great disparity between the two damage awards and that disparity cannot be explained away as simply the product of two separate entities valuing the proof of the plaintiff's injuries in two equally fair ways.

*Id.* (quoting *Quick*, 111 Idaho at 769, 727 P.2d at 1197). In other words, mere disagreement with the jury's verdict is not enough for a trial court to override it; the court must determine that the jury's verdict is such a great departure from the clear evidence at trial that the court's differing view is more than just a fair difference of opinion. Moreover, the district court "is not required to state the dollar amount it would have awarded, but must weigh the evidence and determine the disparity between what it would have awarded and the jury's award." *Id.* at 633–34, 417 P.3d at 230–31.

    a.   *The jury's award of property damages.*

Appellants contend that the jury's award of $15,500 for Blackeagle's 2005 Dodge Ram 250 pickup truck "is blatant error" and "impossible" based on the evidence that was presented at trial. According to Appellants, the unrebutted testimony at trial established that the pickup truck, with its after-purchase add-ons, had a value between $46,000 and $49,000 at the time of the accident. Thus, "there is no logical way to reach $15,500" and "[t]he jury had to use some form of quotient verdict or guess" when they came up with that value. Pease contends that the only evidence presented to support Appellants' view of the pickup truck's value was the opinion testimony of McCandless, which lacked any specifics and was not required to be accepted by the jury.

After considering the evidence below, the district court held that it "[did] not find the disparity between the jury's valuation and that which the Court may have reached to be so different that the Court could determine it was influenced by passion or prejudice." The district court explained that the valuations for the pickup truck that were offered by McCandless were his own estimations, which the jury was not required to accept. We hold that the district court did not abuse its discretion in denying Appellants a new trial based on the jury's award of property damages.

Although "[a] trier of fact may not arbitrarily disregard credible and unimpeached testimony of a witness," if the evidence is contradicted or improbable, then the trier of fact need not accept it. *Papin v. Papin*, 166 Idaho 9, ___, 454 P.3d 1092, 1119 (2019) (quoting *Wood v. Hoglund*, 131 Idaho 700, 703, 963 P.2d 383, 386 (1998)). This rule was reiterated to the jury in the jury instructions, which explained that "as the sole judges of the facts, you must determine *which of the witnesses you believe, what portion of their testimony you accept, and what weight you attach to it*. . . ." *See also* I.C.J.I. 1.00. Moreover, "[i]n appraising evidence before them, '[j]urors have the right to apply their own common sense and to use the general knowledge they have in common with the rest of mankind.' " *Fouche v. Chrysler Motors Corp.*, 107 Idaho 701, 704, 692 P.2d 345, 348 (1984) (quoting *Noland v. Sears, Roebuck & Co.*, 483 P.2d 1029, 1033 (Kan. 1971)); *see also* I.C.J.I. 1.00 ("In your everyday affairs, you determine for yourselves whom you believe, what you believe and how much weight you attach to what you are told. The considerations you use in making the more important decisions in your everyday dealings are the same considerations you should apply in your deliberations in this case.").

Here, the record indicates that the testimony presented by McCandless regarding the value of the pickup truck was improbable, contradicted, and contrary to common sense. At trial, Appellants asked the jury to award $49,000 for Blackeagle's 2005 Dodge Ram 250 pickup truck. The $49,000 was based on $35,000 for the pickup truck and $14,000 for after-purchase add-ons, both valued as of the date of the accident, *i.e.*, 2011. Appellants claim that they computed this value by "look[ing] up 19 different comparables," none of which were submitted to the jury.

Although defense counsel did not present any evidence to the contrary, through cross-examination he was able to establish that the pickup truck likely depreciated in value by more than $7,000 over a six-and-a-half-year period, *i.e.*, the $42,000 Appellants purchased the pickup truck for in 2005 minus the $35,000 Appellants valued the pickup truck at as of 2011. Specifically, defense counsel explained to the jury that Appellants purchased the pickup truck new in 2005 for $42,000 and that McCandless had traded in his nine-year-old Dodge Ram diesel pickup truck for $9,000. Defense counsel also explained that most of the add-ons were purchased in 2005 and 2006, thereby alluding to the fact that those, too, likely depreciated in value. Instead of providing an exact value, defense counsel asked the jury to use their common sense in valuing the pickup truck:

> [Mr. Crawford]: The pickup truck. You know, he bought it . . . in 2005 for $42,000. Most of the add-[o]ns occurred in 2005 and 2006. There were a couple in 2010 and 2011. The . . . truck was worth thirty-five thousand, according to Plaintiff with comparables. We didn't see any comparables. He says it's thirty-five thousand plus add-ons of eleven thousand to fifteen thousand, making the truck worth . . . forty-six to fifty grand is what Plaintiff is claiming that the pickup is worth.
>
> . . . .
>
> Every one of us has had the opportunity, the experience of buying a car, trading in a car, getting a new one, getting a used one, trading one in. A vehicle is undeniably unquestionably the absolute worst investment that you can make at any time, anywhere, under the sun.
>
> . . . .
>
> The argument by the Plaintiff is their testimony is unrebutted. Unrebutted except by common sense. . . . [T]he minute you drive a vehicle off a lot, it losses [sic] its value. I mean it's unquestionable.
>
> There is no way in the world that this vehicle has that value. And even . . . the add-ons lose their value, they depreciate by time. I'm suggesting to you that you all have it within your own ability, your own common sense to come up with a value on that.

I'll give you a broad range. I suggest to you that it's somewhere in the neighborhood of twenty to thirty thousand dollars, that's what that vehicle's worth. I suggest to you that is the appropriate range to look at when you are analyzing damages.

Therefore, because Pease disputed the value suggested by McCandless—a value unsupported by any extrinsic evidence—the jury was justified in not accepting McCandless's testimony. Moreover, it is within the common knowledge and experience possessed by most jurors that a new vehicle would have depreciated considerably over a period of six years. Therefore, we hold that the district court did not abuse its discretion in denying Appellants a new trial based on the jury's award of property damages.

b. *The jury's award of actual expenses.*

Appellants contend that "[t]he jury numbers on medical/health care billings are impossib[le] from the evidence and documents presented." According to Appellants, "[t]he IME, prepared by the defendant's expert, introduced into evidence by plaintiff indicated the medical treatment was fair and reasonable and more likely than not to a reasonable degree of medical certainty," and therefore, should have been accepted by the jury in its entirety. Appellants also contend that the jury should have awarded the entire amount sought for lost wages because "[t]here is no rebuttal evidence on this point. The jury simply ignored th[e] evidence." Pease contends that the jury may not have awarded Appellants the total medical expenses claimed because the IME report explained that not all of the medical expenses were fair and reasonable. Moreover, the evidence presented regarding Appellants' lost wages was speculative.

After considering the evidence adduced at trial, the district court held that it "does not find such a disparity between the award of the jury and that which this Court may have ordered, and therefore is unable to determine the award was influenced by passion or prejudice." The court acknowledged that defense counsel did in fact challenge the accuracy and validity of Appellants' total claimed medical expenses and lost wages. We hold that the district court did not abuse its discretion in denying Appellants a new trial based on the jury's award of actual expenses.

Appellants sought a total damage award of $27,721.61 for actual expenses. This amount consisted of $10,000 for lost wages, $10,366.20 for Blackeagle's medical expenses, and $7,355.41 for McCandless's medical expenses. The jury awarded Appellants actual expenses of $4,900 for McCandless and $10,200 for Blackeagle. The verdict form does not distinguish

12

between medical expenses and lost wages, so it is impossible, based on the verdict form alone, to know how the jury apportioned its award. However, the jury's award resembles the amount requested by Appellants for medical expenses, suggesting the jury did not award Appellants anything for lost wages, which cannot be said was the result of anything improper.

It is probable that the jury did not award Appellants any of their requested lost wages because the jury may have found Appellants' testimony regarding lost wages unconvincing, which it was permitted to do. At trial, Appellants testified that as a result of their injuries sustained during the car accident, Blackeagle lost $5,000 in prospective fishing income and McCandless lost $5,000 in prospective roofing work. However, Appellants failed to produce any evidence supporting their testimony, which defense counsel pointed out to the jury and the district court explained in its decision.

As to the $5,000 in lost roofing income, Appellants failed to produce anything resembling a contract to support McCandless's testimony that he actually had the roofing job, especially since he stated during his deposition that he "had a roofing job that [he] *potentially could have got*." Similarly, Appellants failed to produce any records to support Blackeagle's claim of $5,000 in lost fishing income. When asked by defense counsel whether Blackeagle kept any records on the income she received from fishing, she testified "[j]ust the fact that I use it to pay bills, no. I mean there's no one that requires me to keep track of it." Blackeagle also testified that in coming up with the $5,000 figure she and McCandless "kind of went through our average and kind of figured out like what our costs were. And I remember one year we figured we made like sixteen thousand, but I don't know which year that was." Defense counsel also pointed out during cross-examination that Blackeagle quit fishing, not because of the accident, but because she was scared the fish had been subjected to radiation. Thus, the jury may not have found Appellants' testimony relating to lost wages credible, and therefore, may not have awarded any damages for them on that basis.

Assuming the jury did not award Appellants anything for lost wages, then the difference between the jury's award for actual expenses and the amount requested for medical expenses is not so great that it appears to have been given under the influence of passion or prejudice. Specifically, the jury awarded Blackeagle $10,200 for actual expenses, which is only $166.20 less than the amount requested for medical expenses. Such a minor disparity can be explained

13

away as simply the product of two separate entities valuing the proof of Blackeagle's injuries in two equally fair ways. *See Litke*, 163 Idaho at 633, 417 P.3d at 230.

Similarly, the jury awarded McCandless $4,900 for actual expenses, which is $2,455.41 less than requested. Although this difference is greater than that seen with Blackeagle's request, such disparity is likely due to Pease's objections at trial to the accuracy and validity of McCandless's claimed medical bills. Specifically, in the IME of McCandless, Dr. Anne P. McCormack opined that McCandless's diminished right eye vision, left leg edema, scabs, and changes in the skin, and nutritional assessments were either unrelated to the accident or unclear whether they were related to the accident. Accordingly, the jury may have excluded those expenses from the award based on the uncertainty of Appellants' proof. Dr. McCormack also noted that McCandless reached maximum medical improvement by January 2012. Accordingly, the jury may have also excluded any expenses incurred from January 2012 onward. Accordingly, such disparity, once again, can be explained as simply the product of two different entities valuing the proof of McCandless's injuries in two equally fair ways. *See Litke*, 163 Idaho at 633, 417 P.3d at 230. Therefore, we hold that the district court did not abuse its discretion in declining to award Appellants a new trial based on the jury's award of actual expenses.

   iii.   *I.R.C.P. 59(a)(1)(G)—insufficiency of the evidence to justify the verdict or other decision, or that it is against the law.*

Appellants contend that they are entitled to a new trial under Idaho Rule of Civil Procedure 59(a)(1)(G) because (1) no evidence exists in the record to justify the jury's award for property damages; (2) no medical billings would allow the jury to reach its award for actual expenses; (3) no sum was awarded for lost wages; and (4) the jury's award of general damages "were [] the result of passion or prejudice." We decline to address any arguments raised by Appellants under Rule 59(a)(1)(G) because they are not supported by any argument or authority.

As mentioned above, the failure to support an alleged error with argument and authority is deemed a waiver of the issue. *See Dawson*, 149 Idaho at 383, 234 P.3d at 707. Appellants offer no argument or factual support aside from broad allegations that, for the most part, appear to be incorrectly categorized under Rule 59(a)(1)(G). In essence, Appellants merely rehash the same arguments implicitly rejected by the district court. Therefore, because Appellants' arguments lack citations to any legal authority and coherent argument, we decline to address the merits of these arguments on appeal.

14

**C. The district court did not err in offering Pease, rather than Appellants, the option of either accepting an additur or proceeding with a new trial.**

After finding that the jury's award of general damages "appear[ed] to be given under the influence of passion or prejudice" due to the inexplicable difference between the amounts awarded to McCandless ($5,000) and Blackeagle ($1,000), the district court granted Appellants a new trial conditioned on Pease accepting or rejecting an additur of $4,000 to Blackeagle's award. Pease accepted the additur. As a result, the district court amended the judgment and did not order a new trial.

Appellants contend that the district court erred when it offered Pease, rather than Appellants, the option of either accepting the additur or proceeding with a new trial. Without citing any pertinent authority, Appellants assert that "[i]t is clear that the decision to accept an additur rested with the[m]." Pease contends that the district court properly conditioned the grant of a new trial on his acceptance of an additur because he was the party that was "adversely affected" by the additur, not Appellants. We hold that the option of either accepting an additur or proceeding with a new trial rests solely with the "party adversely affected" by the trial court's proposed adjustment to the jury's damage award, which was Pease in this case.

An "additur" is "[a] trial court's order, issued usu[ally] with the defendant's consent, that increases the jury's award of damages to avoid a new trial on grounds of inadequate damages." *Additur*, Black's Law Dictionary (11th ed. 2019). "When the district court believes that substantial and competent evidence supports the verdict but its assessment of damages substantially diverges from the jury's award of damages such that only passion or prejudice could explain it, then it should grant a new trial or an additur." *Puckett v. Verska*, 144 Idaho 161, 168, 158 P.3d 937, 944 (2007). "[A]n additur . . . may only be granted as an alternative to the granting of a new trial" under Idaho Rule of Civil Procedure 59(a)(1)(F). *Howes v. Fultz*, 115 Idaho 681, 686, 769 P.2d 558, 563 (1989). "[T]he amount by which the trial judge offers to [increase] the damage award is a discretionary decision that is inexorably linked to the exercise of discretion in ruling on a new trial motion under I.R.C.P. 59(a)[(1)(F)]." *Hoglan v. First Sec. Bank of Idaho, N.A.*, 120 Idaho 682, 684, 819 P.2d 100, 102 (1991) (quoting *Quick*, 111 Idaho at 770, 727 P.2d at 1198).

It is the "party adversely affected" that must be provided with the option of either accepting the adjustment in the damage award or proceeding with a new trial. *See Young v. Scott*, 108 Idaho 506, 508, 700 P.2d 128, 130 (Ct. App. 1985). In *Young*, the owners of leased

commercial property sued their former tenants for unpaid rent. The tenants counterclaimed, alleging the landlords had failed to remodel the premises in a timely manner as provided in the lease agreement. A jury found in the tenants' favor and awarded damages. The landlords moved for a new trial. The district court granted a new trial, but only if the tenants refused to accept a remittitur[3] in the damage award. The tenants accepted the remittitur to avoid a new trial. Still unsatisfied, the landlords appealed. *Id.* On appeal, the landlords argued that the district court abused its discretion by not granting their motion for a new trial unconditionally. *Id.* at 509, 700 P.2d at 131. In affirming the district court's decision, the Court of Appeals explained that, although the judge "may not peremptorily modify an award over the objection of the *party adversely affected*," it may suggest an adjustment in the damage award and order a new trial if the suggestion is rejected. *Id.* at 510, 700 P.2d at 132 (emphasis added).

Here, Pease was the "party adversely affected" by the additur because he was the one who would be required to pay more than the amount awarded by the jury. In other words, Pease is the one who would suffer the adverse consequences of the additur. Although Appellants may not be satisfied with the amount of the additur, that does not make them the "party adversely affected" by it since they would receive more than the amount awarded by the jury.

Appellants offer no authority to support their position that their consent was also required for the additur to be effective and a new trial avoided. The only authority Appellants cite in support of their position is *Howes*, 115 Idaho at 682, 769 P.2d at 559. However, *Howes* says nothing about which party must be afforded the option of either accepting an additur or proceeding with a new trial. Rather, the issue before the Court in *Howes* was whether the trial court was required to offer a new trial as an alternative to the additur. *See id.* at 686, 769 P.2d at 563. In the end, the Court never ruled on that issue because it reversed the district court's grant of the additur since the court did not find that the jury award was the result of passion or prejudice, which is a predicate for awarding an additur. *Id.* Nevertheless, although we did not address which party must be given the option of either accepting an additur or proceeding with a new trial, we noted that "the trial court did not offer *defendants* the alternative of a new trial." *Id.* at 683, 769 P.2d at 560 (emphasis added). Thus, if anything, *Howes* supports Pease's position, not Appellants.

---

[3] A "remittitur" is the opposite of an additur; it is "[t]he process by which a court requires either that the case be retried, or that the damages awarded by the jury be reduced." *Remittitur*, Black's Law Dictionary (11th ed. 2019).

In sum, we hold that the district court did not abuse its discretion in offering Pease, the party adversely affected, the option of either accepting the additur or proceeding with a new trial. Accordingly, we affirm the district court's decision on this issue.

**D. The district court did not err in declining to issue a subpoena requiring the independent medical examiner to testify.**

Dr. Anne P. McCormack, an orthopedist located in Spokane, Washington, was engaged by Pease to perform Independent Medical Examinations (IME) of McCandless and Blackeagle. Pease also retained Dr. McCormack as an expert witness. At trial, Pease determined that Dr. McCormack's testimony was not needed and therefore did not call her as a witness. According to Appellants, they knew that Pease "would use this tactic," so they attempted for months to subpoena Dr. McCormack to ensure her appearance as a witness at trial. However, the district court did not allow Appellants to subpoena Dr. McCormack because, "[a]s an expert retained by [Pease], I.R.C.P. 26(4)(A)(v) prevented [Appellants] from contacting Dr. McCorm[a]ck," let alone from subpoenaing her. The district court held that Appellants could have hired their own experts to offer contrasting opinions, but chose not to do so.

On appeal, Appellants contend that they were denied due process by the district court's refusal to allow them to subpoena Dr. McCormack. Without specifying how it would help their case, Appellants assert that "[i]mportant questions could have been asked of this witness." Pease contends that Appellants were not denied due process because they stipulated to the admission of Dr. McCormack's IME reports and they could have retained their own expert to rebut her reports. Accordingly, Appellants did not "adequately show how the absence of a defense witness fundamentally impacted their due process rights." We hold that the district court did not err in declining to allow a subpoena to compel the attendance of Dr. McCormack because she was an out-of-state witness outside the court's subpoena power.

Idaho Rule of Civil Procedure 45 provides guidance on when and how a person may be compelled to appear at trial and testify in a designated matter and at a specified place and time. Rule 45(g) provides that "[a]t the request of any party, subpoenas for attendance at a hearing or trial must be issued as provided by Rule 45(a), and may be served at any place within the state." However, an out-of-state non-party witness is beyond the trial court's subpoena power. In *Brannon v. City of Coeur d'Alene*, we held that "[t]here is no rule of civil procedure that would require the district court to provide subpoenas to out-of-state non-party witnesses." 153 Idaho 843, 851, 292 P.3d 234, 242 (2012). Additionally, Idaho Rule of Civil Procedure 35 contains no

17

provisions addressing a party's ability to subpoena the examiner who conducted the independent medical exam. Rule 35 merely provides that on request by either party, the examiner's report must be disclosed, which it was in this case. *See* I.R.C.P. 35(b).

Here, Dr. McCormack was beyond the district court's subpoena power because she resided out-of-state. Accordingly, the district court did not err in declining to subpoena Dr. McCormack. Moreover, Appellants cannot prove that they were prejudiced by their inability to subpoena Dr. McCormack because they had other means of questioning her prior to trial. For example, Appellants could have obtained a subpoena in Washington to require Dr. McCormack to appear at a deposition in that state. *See Strong v. Intermountain Anesthesia, P.A.*, 160 Idaho 27, 32, 368 P.3d 647, 652 (2016). Additionally, Appellants could have hired their own expert witness to rebut Dr. McCormack's report. Therefore, we hold that the district court did not err in declining to issue a subpoena to compel Dr. McCormack's appearance at trial. Accordingly, we affirm the district court's decision on this issue.

### E. Appellants have failed to properly establish Blackeagle was denied "a jury of her peers."

Appellants contend that Blackeagle, a Native American, was denied her "Idaho and U.S. Constitution[al] guarantee [to] a jury of one's peers" because there were no Native Americans on the jury. Pease contends that Appellants have waived this issue by failing to support their argument with legal authority. Initially, although we note that the district court failed to address this issue below, the court is not at fault for failing to do so because Appellants' argument below merely consisted of two sentences: "The plaintiff, Robin Blackeagle was Nez Perce. No Native-Americans were on the jury." Appellants' "argument" may have been a statement, but it was by no means an argument. As we held in *Highland Enter., Inc. v. Barker*, "[a] one sentence statement regarding whether the award violates due process is hardly sufficient to constitute argument . . . ." 133 Idaho 330, 350, 986 P.2d 996, 1016 (1999). Here, the two-sentence statement by Appellants simply asserted facts unsupported by evidence, argument, or analysis. Nevertheless, because the district court did not address the issue below, and because the right to a proper jury trial is enshrined in the Idaho Constitution as a right that shall remain "inviolate," we will briefly address the issue. Idaho Const. art. I, § 7.

"A defendant's right to be tried by a jury of her peers is a fundamental tenet of constitutional law, both in our nation and in this state." *State v. Vasquez*, 163 Idaho 557, 562, 416 P.3d 108, 113 (2018). "The American tradition of trial by jury, considered in connection

18

with either criminal or civil proceedings, necessarily contemplates an impartial jury drawn from a cross-section of the community." *Thiel v. Southern Pac. Co.*, 328 U.S. 217, 220 (1946); *see also J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 128 (1994) ("We have recognized that whether the trial is criminal or civil, potential jurors, as well as litigants, have an equal protection right to jury selection procedures that are free from state-sponsored group stereotypes rooted in, and reflective of, historical prejudice.").

The extent of this right has been codified and explained in Idaho Code section 2-202, which provides:

> It is the policy of this state that all persons selected for jury service be selected at random from a *fair cross section* of the population of the area served by the court, and that all qualified citizens have the opportunity, in accordance with this act to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose.

(Emphasis added). This means that the pool of prospective jurors for each trial must be drawn in a manner that allows for a fair cross section of the county's population to have an opportunity to serve. Indeed, the U.S. Constitution only requires "an impartial jury" drawn from "the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. In a large state with relatively distinctive demographic regions, it is no surprise that a jury pool fairly drawn in one county will necessarily look much different than that of another. Yet all that is required by the U.S. Constitution and section 2-202 is that the jury pool be drawn from a fair cross section of eligible jurors in each respective county, not that the jury panel ultimately drawn mirror the community. *See Lockhart v. McCree*, 476 U.S. 162, 173 (1986) ("[W]e impose no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." (quoting *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975))). Idaho Code section 2-213 explains the process that must be followed if it is discovered that section 2-202 has not been followed:

> Within seven (7) days after the moving party discovered or by the exercise of diligence could have discovered the grounds therefor, and *in any event before the trial jury is sworn* to try the case, a party may move to stay the proceedings, . . . or for other appropriate relief, on the ground of substantial failure to comply with this chapter in selecting the grand or trial jury.

I.C. § 2-213(1) (emphasis added). Section 2-213 further provides that the "procedures prescribed by this section are the exclusive means by which . . . a party in a civil case may challenge a jury on the ground that the jury [panel] was not selected in conformity with this

chapter." I.C. § 2-213(3). Thus, a challenge to the manner in which a jury panel was drawn, must be brought before the trial jury is selected and sworn in to try the case.

Here, there is no evidence in the record to support the assertion that the panel from which the jury was selected in this case was not a random cross section of the population of Nez Perce County.[4] Additionally, Appellants did not properly challenge the makeup of the jury panel below by moving to stay the proceedings on the grounds that there was a failure to comply with the requirements of section 2-202 in selecting the panel. Instead, Appellants waited until after the jury had rendered its verdict to challenge the makeup of the jury panel for the first time in a motion for a new trial. Thus, even if Appellants had properly supported their motion with evidence, analysis, and argument, it still should have been denied.

**F. The district court did not err in reducing Appellants' damage award by the sum paid by Pease's insurance.**

After trial, the jury returned a verdict in favor of Appellants and awarded damages. The jury's award included $15,500 in property damages for Blackeagle's 2005 Dodge Ram 250 pickup truck. The district court subsequently entered judgment on the jury's verdict, awarding Appellants the entire damage award. Pease moved to alter the district court's judgment. Pease's motion is not in the record, but it appears he requested that the district court reduce the amount of property damages awarded by the jury by the amount Appellants received from Pease's insurance, which in this case was the entire $15,500. The district court concluded that Pease "shall prepare an appropriate Amended Judgment, which should not include any amount for the vehicle, as those damages are fully paid." Thereafter, the district court issued an amended judgment, removing the jury's award of property damages entirely.

On appeal, Appellants contend that the district court erred in reducing the judgment by "the sum paid by their personal insurance, GEICO." According to Appellants, "[t]he judgment should not be reduced pursuant to *Dyet v. McKinley*, 139 Idaho 526, 81 P.3d 1236 (2003)." We hold that the district court did not err by reducing Appellants' damage award.

Several jurisdictions, including Idaho, have enacted statutes that require collateral source payments to be deducted from damage awards. *See* I.C. § 6-1606. Idaho Code section 6-1606

---

[4] It is worth noting that Appellants did not allege any impropriety by counsel during voir dire or assert a *Batson* challenge as to Pease's peremptory strikes. *Batson v. Kentucky*, 476 U.S. 79 (1986); *see also Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 631 (1991) (making *Batson* applicable in civil cases). Therefore, we can only assume that Appellants' objection to the composition of the jury regards the makeup of the entire panel of prospective jurors.

mandates that a tortfeasor is liable only for those damages that remain after most forms of collateral source payments are taken into account:

> In any action for personal injury or property damage, a judgment may be entered for the claimant only for damages which exceed amounts received by the claimant from collateral sources as compensation for the personal injury or property damage, whether from private, group or governmental sources, and whether contributory or noncontributory. . . . Evidence of payment by collateral sources is admissible to the court after the finder of fact has rendered an award. *Such award shall be reduced by the court to the extent the award includes compensation for damages which have been compensated independently from collateral sources.*

(Emphasis added). "The statute's purpose is to prevent double recovery." *Carrillo v. Boise Tire Co., Inc.*, 152 Idaho 741, 753, 274 P.3d 1256, 1268 (2012). "The application of I.C. § 6-1606 is a question of law over which this Court exercises free review." *Id.*

We initially note that Appellants contend the district court erred when it reduced their damage award by the amount received from insurance, but have failed to attach Pease's motion to amend the damage award or any other relevant document. This Court is "bound by the record and cannot consider matters or materials not part of or contained therein." *Mc Lean v. Cheyovich Family Tr.*, 153 Idaho 425, 431, 283 P.3d 742, 748 (2012) (quoting *State ex rel. Ohman v. Ivan H. Talbot Family Tr.*, 120 Idaho 825, 827, 820 P.2d 695, 697 (1991)). Accordingly, we address Appellants' argument with what little record we have.

Based on the limited record, it appears the district court properly applied section 6-1606. Pease's insurance company, State Farm, paid Appellants' insurance company, GEICO, $1,000 to cover their deductible and Appellants $19,991.90 to cover the cost to replace the pickup truck. Thus, pursuant to section 6-1606, the district court was required to reduce the damage award by the amount paid by Pease's insurance company in order to avoid double recovery. Therefore, we hold that the district court did not err in reducing Appellants' damage award by the amount paid by insurance.

**G. Appellants' request to reform Idaho Rule of Evidence 411 is improper.**

Appellants asserted below that Idaho Rule of Evidence 411 was unconstitutional. This rule excludes "[e]vidence that a person was or was not insured against liability" offered to "prove whether the person acted negligently or otherwise wrongfully." I.R.E. 411. The record discloses that Appellants made no attempt to even offer such evidence at trial, nor did they object to the giving of Idaho Civil Jury Instruction No. 1.04, which reads: "Whether a party has

21

insurance is not relevant to any of the questions you are to decide. You must avoid any inference, speculation or discussion about insurance." Generally, "[f]ailure to properly raise such an issue below is a waiver of the right to raise the issue on appeal." *Roell v. Boise City*, 134 Idaho 214, 216, 999 P.2d 251, 253 (2000). Nevertheless, because this issue was addressed by the district court below, we will discuss it briefly. *See Northcutt v. Sun Valley Co.*, 117 Idaho 351, 357, 787 P.2d 1159, 1165 (1990) ("On occasion we have allowed an issue that was not formally raised below to be considered on appeal when the issue was implicitly before the lower tribunal, and was considered and passed on by that tribunal.").

On appeal, Appellants pivot and ask the Court to retroactively reform Rule 411 to "allow the [trial] court to give instructions on health issues related to such factors as age, medications, limitations or other unusual circumstances and to allow the mention of the real party in interest, to wit: insurance." According to Appellants, "the inability to mention that [Pease] was insured was harmful to the process of a fair trial because of his physical limitations. He was elderly and suffered from neuropathy" and the insurance company used him as a "prop" to invoke sympathy and bias from the jury.

Appellants' request that we "reform" Rule 411 is not a proper request to make on appeal, and, even if granted, could not be applied *ex post facto* to this case. When the Idaho Supreme Court hears an appeal concerning a court rule, it may interpret the meaning or consider the constitutionality of the rule, but it does not act as a policy-making body to be lobbied for specific changes by those seeking to alter the rule for their benefit. Contrary to Appellants' suggestion, an appeal is not the proper mechanism to lobby the Court to modify a court rule. Rather, proposals to modify or amend the Idaho Court Rules, including the Idaho Rules of Evidence, typically occur through the several committees this Court has created to aid with the administration of justice. One such committee is the Evidence Rules Advisory Committee. As evidenced by the name, this committee recommends amendments to the Idaho Rules of Evidence, which are only made after receiving feedback from a broad spectrum of interests. Upon receipt of the recommendations, this Court considers them. Accordingly, Appellants should address their criticism of Rule 411 with the Evidence Rules Advisory Committee, rather than seeking reformation of the rule from the Court via an appeal.

**H. Pease is entitled to attorney fees on appeal.**

Pease requests attorney fees on appeal pursuant to Idaho Appellate Rules 35(b)(5), 40, and 41(a), Idaho Rule of Civil Procedure 54(e)(2), and Idaho Code section 12-121. Section 12-121 provides, in part, that "[i]n any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties when the judge finds that the case was brought, pursued or defended frivolously, unreasonable or without foundation." We have held that "[a]n appeal may be deemed frivolous, and attorney fees awarded, for failure to properly comply with I.A.R. 35(a)(6)." *Woods v. Sanders*, 150 Idaho 53, 61, 244 P.3d 197, 205 (2010); *see also Thornton v. Pandrea*, 161 Idaho 301, 321, 385 P.3d 856, 876 (2016) (explaining that attorney fees were appropriate under section 12-121 because the "arguments on appeal largely mirror the same arguments that failed before the district court, without adding significant analysis or authority."). Here, Appellants' arguments, which are nearly identical to their arguments that failed before the district court, are severely lacking in reference to the record and citation to relevant legal authority. As a result, we conclude that this appeal was brought and pursued frivolously, unreasonably, and without foundation, and grant attorney fees against Appellants pursuant to section 12-121.

## IV.    CONCLUSION

We affirm the district court's order on Appellants' motion for a new trial. Attorney fees and costs are awarded to Pease.


Chief Justice BURDICK, Justices BRODY, BEVAN and STEGNER **CONCUR.**